WILLIAM KERKOW, JOHN ERB, AND AUGUST ENGLISH, PLAINTIFFS IN ERROR, V. FREDERIKA BAUER ET AL., DEFENDANTS IN ERROR.

1. **Pleading:** PETITION. The petition, *Held*, To state facts sufficient to constitute a cause of action against the defendants in favor of the plaintiffs.

2. **Liquor Selling:** ACTION BY WIDOW AND CHILDREN. Under the code system of pleading and the provisions of the statute now in force, known as chapter 50, Compiled Statutes, an action can be maintained by the widow and infant children, jointly or severally, whose husband and father has lost his life in consequence of intoxication, against any and all persons, jointly or severally, who sold, gave, or furnished any intoxicating liquor which was drank by him on the day or about the time of such intoxication.

3. ———: ———: EVIDENCE. On the trial of such case it is competent to prove the physical condition and health of deceased, his habits of industry, his avocation, the monthly or annual product of the same, and whether any and all of the plaintiffs are of such tender age as to render them entirely dependent upon their parents for support.

4. ———: ———: CONSTRUCTION. The word "beer," without restriction or qualification, denotes an intoxicating malt liquor, and is within the meaning of the words "intoxicating liquors" as used throughout the statute.

5. ———: ———: EVIDENCE. This class of actions is brought for the loss of support, not for the loss of the society or companionship of deceased; hence, proof of the lack of affection, sympathy, or respect for deceased on the part of the adult plaintiff, is inadmissible.

6. ———: ———: ———: INSTRUCTIONS TO JURY. There being evidence tending to prove that the deceased was intoxicated on the fatal day, and it being contended on the part of the defendants that he was not intoxicated, notwithstanding such evidence, because they had not sold him enough liquor to make him intoxicated, *Held*, That it was not error on the part of the court to instruct the jury that "it was not necessary on the part of the plaintiffs to prove that the defendants sold all the liquor to the said John Bauer that may have produced his intoxica-

tion," etc., nor to allow counsel for the plaintiffs to urge to the jury that, rather than reject the evidence before them of the intoxication of the deceased, they might presume that he obtained and drank liquor otherwise which also contributed to his intoxication.

7. ——: ——: ——. Evidence offered by defendants to prove that on the fatal night,,on account of its unusual darkness, another person in that vicinity lost his way, and still an other had great difficulty in keeping it; also, that deceased had on a former occasion, on a bright moonlight night, lost his way, etc., was properly rejected.

8. ——: ——: ——. The evidence in the case, *Held*, Sufficient to sustain the verdict.

9. Trial: INSTRUCTIONS. When, upon a trial, a party presents an instruction consisting of four propositions, each perfect in itself, with a fifth one reiterating and emphasizing the said propositions, it is *not* error on the part of the court, having given the four propositions in charge to the jury, to detach and refuse to give the fifth one, without regard to the law of such proposition, or its applicability to the facts of the case.

ERROR to the district court for Dodge county. Tried below before GEORGE W. POST, J.

*E. F. Gray*, for plaintiffs in error, cited: *Shugart v. Eagan*, 83 Ill., 56. *Krach v. Heilman*, 53 Ind., 526. *Schlosser v. The State*, 55 Ind., 82. *Klare v. The State*, 43 Ind., 483.

*William Marshall*, for defendants in error, cited: *Roth v. Eppy*, 80 Ill., 286. *People v. Wheelock*, 3 Parker (N. Y.), 14. *The People v. Hawley*, 3 Mich., 339. *Binford v. Johnson* (Ind.), 22 Am. Law Reg., 50. *Roose v. Perkins*, 9 Neb., 312. Sackett on Instructions, 181 and 182.

COBB, J.

The defendants in error are the widow and infant children of one John Bauer, who, one dark night in October 1881, drove his wagon off a bluff of Pebble creek, in Dodge

county, where, a few days afterwards, his dead body was found under his overturned wagon, and his two drowned horses in the creek.   The plaintiffs in error are the liquor dealers of Scribner, in the said county, who sold him liquor on the day of the occurrence, which, it is alleged, made him intoxicated and caused him to lose his way from Scribner to his home and drive off the bluff into the creek, with the fatal consequences above stated.   There was a trial to a jury in the district court, and a verdict and judgment for the plaintiffs below for eighteen hundred dollars and costs. The cause is brought to this court on error.

There are twenty-two errors assigned in the petition in error, some of which are merely formal and will not need to be noticed separately, but those which present substantial points will be considered in their order.

"1.   That the facts set forth in the said petition of the defendants in error are not sufficient in law to maintain the aforesaid action against the plaintiffs in error."

Chapter 50 of the Compiled Statutes, after providing for the granting of license for the sale of malt, spirituous, and vinous liquors, when properly applied for and deemed expedient, the giving of bonds by the licensed persons, etc., proceeds as follows:

"SEC. 11.   Any person who shall sell or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks, without having first complied with the provisions of this act and obtained a license as herein set forth,   *   *   *   *   *   shall be liable in all respects to the public and to individuals, the same as he would have been had he given bonds and obtained license as herein provided.

"SEC. 15.   The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic, he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of or justly attributable to his traffic in intoxicating drinks, etc.

"SEC. 16. It shall be lawful for any married woman or any other person at her request to institute and maintain in her own name a suit on any such bond for all damages sustained by herself and children on account of such traffic, etc.

"SEC. 18. On the trial of any suit under the provisions hereof, the cause or foundation of which shall be the acts done or injuries inflicted by a person under the influence of liquor, it shall only be necessary, to sustain the action, to prove that the defendant or defendants sold or gave liquor to the person so intoxicated or under the influence of liquor, whose acts or injuries are complained of, on that day or about that time when said acts were committed or said injuries received," etc.

The petition is in the usual form, as applicable to the former statute. And while it doubtless contains several allegations which the changes in the law have rendered unnecessary, I think that it contains all that are essential; at least, in the absence of specific grounds of objection, we must hold it to be sufficient.

"2. That the said court erred in sustaining the demurrer of these defendants in error to the second ground of defense," etc.

"3. That the said court erred in sustaining the demurrer of these defendants to the answer of each of these plaintiffs in error, alleging misjoinder of parties defendant."

The above two points may be properly considered together, considering the allegation of the petition that the defendants were, at the time of the selling complained of, engaged in business in the retail traffic in intoxicating liquors, in the village of Scribner, each for himself, which negatives the idea of the act of selling being a joint one. Were we to apply the rules of pleading which existed before the adoption of the reformed or code system, we would probably hold that the demurrer should have been overruled or held to reach back to the petition as the first de-

fective pleading. But we cannot apply the common law rules of pleading to this case. While the law provides for licensing the sale of intoxicating liquors, it regards the making of a person intoxicated, or the selling or furnishing a person intoxicating liquors with which he makes himself intoxicated, as a tort or wrong, and holds such person so selling or furnishing responsible for certain of the consequences of such intoxication. And to provide against the difficulty, or rather impossibility, of proving whether it was the first, middle, or last drink that caused the intoxication the statute provides that, in such cases, "it shall only be necessary, to sustain the action, to prove that the defendant or defendants sold or gave liquor to the person so intoxicated or under the influence of liquor, whose acts or injuries are complained of, on that day or about that time when said acts were committed or said injuries received." While this statute does not in terms state what it will be necessary to plead or allege in such case, yet, when we consider the object and office of pleading, we must regard the provision of the section as applying as well to the pleading as to the proof. If I am correct in this view, then it made no difference that each of the defendants was doing business for and by himself, and sold each his separate glass of liquor to the deceased as his individual act in which the other two defendants had no interest. While the act of each defendant in selling the liquor was his own individual act, yet the law makes them in certain contingencies jointly interested in and responsible for the intoxication caused thereby. And it was only necessary to allege and prove the fact of selling or furnishing intoxicating liquors by the defendants to the deceased on, or about the day of his intoxication. Had the plaintiffs failed to prove such selling, or furnishing by each of the defendants, then such defendant or defendants would have been entitled to a judgment in his favor; but such acquittal would have had no effect upon the other defendants except to enlarge their responsibility.

"4.   That said court erred in admitting the evidence on the part of these defendants in error to which the plaintiffs objected."

Upon the examination of the adult plaintiff as a witness in her own behalf and that of the infant plaintiffs, she was permitted to answer the following questions, put to her by plaintiffs' attorney over the objection of the defendants:

1.   What was his physical condition, as to health?

2.   Was he a good or a bad farmer?

3.   How well did he provide for his family?

4.   How much did he produce or earn each year?

5.   State whether any of the children are large enough or old enough to contribute to the support of the family.

Plaintiffs, in their brief, do not point out wherein this evidence is objectionable, and I fail to see that it is so. This action is brought for the loss of the support which would otherwise have been supplied them by the husband and father.   The extent of such loss could only be measured by the character and value of the services of the deceased in his avocation while living.   And as to question numbered five, the value of such support to the children would depend, in some degree at least, upon their inability to support themselves.

The witness John Bauer, upon his direct examination on the part of plaintiffs below, was allowed to answer the following question over the objection of the plaintiffs in error.

Q.   If a man takes enough of it, will it intoxicate?

This question was asked in reference to the beer which had been furnished to deceased and witness by the defendant English, and drank by them.

Beer, as defined by Craig in his dictionary, is "a fermented liquor made from the malt of barley, and flavored with hops.   It may be called the wine of barley.   A variety of kinds are made; those in use at present are distinguished by the names of ale, porter, or strong beer, table beer, and small beer, which differ little except in strength

and the mode of preparation in their manufacture." Beer, then, is a malt liquor, as much as whiskey is a spirituous, or port wine a vinous liquor. In the eleventh section of the act, malt, spirituous, and vinous liquors are classed together as intoxicating drinks, and their sale without license forbidden under severe penalties. And by the act approved Feb. 28, 1881 [Comp. Stat., chap. 50, § 31], beer is classed with wine and other intoxicating liquors, and the treating to them in saloons, or other public places, and the accepting of such treats, prohibited under penalties. By these acts, I consider the question of the intoxicating qualities of "beer" as settled. The question was therefore unnecessary, and hence the ruling erroneous. But at most it was error without prejudice.

"5. That the said court erred in ruling out the evidence offered by the plaintiffs in error on the trial of said cause, to which rulings they excepted."

While Frederika Bauer was on the stand as a witness in her own behalf and that of her children, the other defendants in error, she was cross-examined by the attorney for plaintiffs in error, by whom she was asked the following question:

Q. State if Albert Bleihl, or John Bauer, or one of them, Sunday morning, when they come to report at your house that your husband was dead, if one of them did not ask you if they should bring the body home, and if you did not answer substantially this: "No, I won't have him there," or "I would not have him there"?

Upon this question being objected to as immaterial by plaintiffs' counsel, defendants' counsel offered to show by the witness that she did not during the lifetime of her husband and not until this suit was brought and perhaps does not now estimate the value of her husband's support or his life at anything. He also offered to show that she not only refused to have the body brought home, not only refused to attend the funeral, but would let no one else of the fam-

ily attend it; not only that the funeral was had on account of her action at another place and by parties comparatively indifferent to the deceased, on this account, but that prior to his death she said she wished he would die, or statements that amounted to that; and that immediately after his death, when, as counsel remembers now, she was informed of his death, that at that time she expressed herself not as sorry for his death but only for the loss of the team—or words to that effect; and that still subsequent to that time she said, in so many words, that she was glad that he was dead, and that she was only sorry that he died in that way. To which offer the plaintiff objected as immaterial. Objection sustained, and defendants excepted. This offer was again made in substantially the same form, and the testimony being again objected to by plaintiffs' counsel as irrelevant and incompetent, the objection was by the court overruled. But had this not been done, we could not have found error in the keeping out of the testimony offered. The right of action in this class of cases depends in no degree upon sentiment. Affection for the deceased on the part of one or all of the plaintiffs could neither add to, nor the want of it take from, the amount of the verdict, if they are entitled to one. That should be the *real* value of the support which has been lost in the death of the husband and father, not the value at which such support may have been estimated by one or all of the plaintiffs.

"6. That said court erred in giving to the jury each of the instructions asked for by these defendants in error which are numbered 1, 2, 3, 4, and 5."

The following are the instructions complained of:

"1. The court instructs the jury that this is a civil action of the plaintiffs against the defendants jointly for damages which the plaintiffs claim to have sustained as the result of drinking intoxicating liquors, which plaintiffs claim to have been sold to and drank by John Bauer, the husband of Frederika Bauer and the father of —— Bauer

*et al.*, which liquors plaintiffs claim were sold by said defendants.

"2. If from the evidence you find that the said John Bauer bought and drank intoxicating liquors at various places and from various persons, including all of the defendants, on the thirteenth day of October, 1881, and that he on that day became drunken from the combined effect of such liquor, and that on that day he died or was killed as the consequence or effect of such intoxication, then all of these defendants are jointly liable.

"3. The jury are further instructed that though they may believe from the evidence that the deceased had bought or taken liquor at places other than at the saloons of the defendants, still this fact would constitute no defense to this action, provided the jury believe from the evidence that the deceased obtained intoxicating liquor at the saloons of the defendants which contributed to his intoxication, and that his death resulted as a consequence of such intoxication.

"4. The court instructs the jury that, if from the evidence they believe that on the day of the death of said John Bauer he became intoxicated and that by reason of such intoxication he came to his death, it shall only be necessary, in order to hold the defendants liable, to prove that they sold intoxicating liquors to the said John Bauer at a time when the drinking of such liquor so sold (if any) tended to produce said intoxication or that contributed to such intoxication.

"5. The court further instructs the jury that, in this case it is not necessary on the part of the plaintiffs to prove that the defendants sold all the liquors to the said John Bauer that may have produced his intoxication, if he was intoxicated. It is sufficient if it is proved that they sold him intoxicating liquor that contributed to such intoxication, and that such intoxication resulted in his death."

The chief if not the only objection to these instructions

on the part of the plaintiffs in error, as pointed out in the brief of counsel, is, what is therein styled "these continuing suggestions from the court to the jury that they might believe from the evidence that the deceased had bought or taken liquor at places other than at the saloons of the defendants," etc. And we will probably save time by considering also in this connection the objections numbered 9, 10, and 11, as follows:

"9. That the said court erred in permitting the attorney of the defendants in error, over the objection of the plaintiffs in error, on the trial of said action, to urge, suggest, and argue to the jury that if the beer it was shown by the evidence the deceased, John Bauer, had got of the plaintiffs in error on the thirteenth day of October, 1881, was not sufficient to cause him to be intoxicated at the time of the accident resulting in his death, he must have got intoxicating liquor somewhere else, of other parties than the plaintiffs in error; and the said court erred in overruling the objection of the plaintiffs in error to said argument, suggestion, and urging; and as well, said court erred in giving his sanction of said argument, suggestion, and urging before the jury."

Under the other two numbers the said objection is twice repeated in somewhat different language; but I think the point is sufficiently apparent without setting them out more at length.

There was evidence tending to prove that the deceased was intoxicated on the evening of the day both shortly before and immediately after his starting for his home. He was proved to have drank four or five glasses of beer and one or two glasses of cider that afternoon. When about ready to start home, he went with the witness Albert Bleihl to the bar of August English, one of the plaintiffs in error, and called for beer for himself and witness. Mr. English refused to let him have it, for the reason that "he had got enough." It was also proved that, as he started to drive

on the road towards home, he drove and acted like an in-
toxicated man.   Yet it was no doubt argued and contended
for there, as it is here, by counsel for plaintiffs in error, that
deceased was not intoxicated on the fatal night because he
had not drank enough to intoxicate him; that four or five
glasses of beer and a glass or two of cider were not suffi-
cient to intoxicate a robust, healthy man as deceased was
shown to have been.   I fail to see that it was an unfair
argument on the part of counsel for defendants in error to
make to the jury that, rather than reject all of this evidence
of the actual state of intoxication of the deceased, they
should presume that he must have obtained and drank
liquors otherwhere than that proved.   Nay, I think that
such a conclusion would arise in every mind.   Here is a
man evidently intoxicated, as evidenced by his looks, ac-
tion, and speech.   "But," says an objector, "he cannot be
intoxicated, he has only drank five or six glasses this after-
noon, and that could not intoxicate a strong man like him."
Some might say, "that depends upon many subtle conditions;
the state of his nervous and bilious system, the regularity of
his meals, sleep, digestion, and many other things apper-
taining to the man, and many others appertaining to the
liquors drank, whether all of the same brewage or distilla-
tion or of different ones," etc.   But the great majority of
minds would immediately revert to the great improbability
of the witnesses, or anybody having knowledge of all the
opportunities afforded by any village or city to a person
whose appetite has already been stimulated by numerous
libations, for further indulgence.   And to draw the infer-
ence from facts already proved that other facts, though not
proved, must exist by force of logical sequence is not, as I
understand it, an abuse of the privileges of debate in a trial
court.

In regard to the instructions objected to in this con-
nection, I think the court laid down the law correctly, and
that the instructions were necessary to give the jury a

knowledge of their duty, and were not suggestive of any right on their part, to consider facts not proven.

No. 12 of the petition in error is as follows: "The said verdict is not sustained by sufficient evidence and is contrary to law." With this objection we will also consider the 15th. "That the court erred in excluding from the jury the evidence given by F. A. Allerman, a witness for the plaintiffs in error, and the said court erred in refusing the offer of evidence from this same witness made by these plaintiffs in error to prove that the deceased John Bauer was liable to get lost at any time, when it was light or dark, and when not intoxicated or drinking;" also No. 16. "That said court erred in refusing the offer of these plaintiffs in error to prove by Chris. Dahms and John Cumsnider, that the last named witness at the same time of the accident that resulted in the death of said deceased, John Bauer, being on his road home from Scribner as deceased was, lost his way and wandered a mile from his road and was compelled to stay overnight at the house of the first above-named witness because of the darkness of the night;" also, No. 21. "That said court erred in sustaining the objection of the defendants in error to the question of the plaintiffs in error put to Aug. Shultz as follows, to-wit: State whether or not you had any trouble to follow the road (referring to a road in the vicinity of Scribner), on the night that the accident occurred that resulted in the death of John Bauer?"

The witness F. A. Allerman was sworn on the part of plaintiffs in error, and, having stated that he resided about five miles west of Scribner and about four miles north-west of the late residence of the deceased, and had known him for about eight years previous to his death, his examination proceeded as follows:

Q. Do you remember of seeing the deceased, John Bauer, about a year ago?

A. Yes, sir.

Q.  At that place, I mean?

A.  Yes, sir.

Q.  What time of day or night was it?

A.  It was about midnight.

Q.  How came he to be there; what were the circumstances?

A.  Well he called me out of bed, and said he had lost his road, and wanted to know where he was.

Q.  What kind of a night was that?

A.  It was a bright, moonlight night.

Q.  Where did he say he was coming from or going to?

Plaintiff objects as immaterial.  The defendants offer to show that the deceased was liable to get lost at any time, whether it was a light or dark night; and further offers to show that he had not drank anything at that time.

Plaintiff objects as before.  Sustained and defendants except.  Plaintiff objects to the testimony already given by witness, as immaterial, and asks that it be stricken from the record.  Sustained and defendants except.

There was no question that it was a dark night.  Two or three of the plaintiffs' witnesses testified to that.  But, had it been deemed necessary to prove the character of the night more definitely, that could doubtless have been done by direct testimony.  I do not think narratives of the experiences or observations of witnesses on the night in question could be received for that purpose.  Says a standard author on the law of evidence: "Great latitude is justly allowed by the law to the reception of indirect or circumstantial evidence, the aid of which is constantly required, not merely for the purpose of remedying the want of direct evidence, but of supplying an invaluable protection against imposition.  The law interferes to exclude all evidence which falls within the description of *res inter alios acta*, the effect of which is, as will presently be seen, to prevent a litigant party from being concluded or even affected by the evidence, acts, conduct, or declarations of strangers.

And this rule is to be regarded to a great extent, at least, not so much as a limitation and restraint of the natural effect of such collateral evidence, but as a restraint limited by and co-extensive with the very principle by which the reception of such evidence is warranted; for the ground of receiving such evidence is the connection between the facts proved and the facts disputed; and there is no such general connection between the acts, conduct, and declarations of strangers as can afford a fair and reasonable inference to be acted on generally, even in the ordinary concerns of life, still less can they supply such as ought to be relied on for the purpose of judicial investigation." Starkie on Evidence, 10 Ed., 81. As to the offer to prove by the witness, F. A. Allerman, that the deceased was liable to get lost at any time, whether it was a light or a dark night, and to show that he had not drank anything at that time, if it is true that the deceased was deficient in the capacity to find his way either by day or night, and such incapacity was material to the question on trial, it could, I think, be shown by the testimony of a witness or witnesses well acquainted with him, and who from frequent opportunities of observation, had matured a judgment of deceased's abnormal want of capacity in that regard; but it will scarcely be seriously contended that one instance of a man becoming lost, or losing his road in the night time, either in the woods or on the prairie, is sufficient to give him a settled character as an imbecile in that regard. But the character or capacity of the deceased to find his way, or his abnormal capacity to lose his way when sober, were not material to the issue before the jury. The law which gives its sanction to the sale of intoxicating liquors makes no distinction among the persons to whom the same may be sold, except that they may not be sold to minors, apprentices, Indians, insane persons, idiots, or habitual drunkards; but it says to the seller, by engaging in this traffic you assume a fearful responsibility. You assume to pay all damages

that the community or any individual may sustain in consequence of such traffic. They of all men know that intoxicating liquors affect no two persons exactly alike. In the case of some persons, it brings out passions and qualities scarcely possessed by them in a state of sobriety; in others, it intensifies those most prominent in their natural condition. So, in the case at the bar, if it were true that the deceased was scarcely able to find his way home when sober, and only by calling in the friendly offices of his neighbors to tell him where he was and put him on his way, then it only lacked the slight intoxication of a few glasses of beer and cider to render him quite incapable. But the vendors of this intoxicating liquor are just as responsible under the law for the consequences of this incapacity, as though, when in a state of entire sobriety, deceased had possessed the path-finding capacity of Kit Carson himself.

Having examined with interest the ingenious theory of the casualty, as contained in the brief of plaintiffs in error, I agree that a sober man in the darkness of that night might have mistaken the north line of posts on Mr. Witts' farm for the south line, and might also have mistaken the willow fence or hedge for the plum thicket near the bridge; but here, a sober man not finding the bridge would have stopped, while one whose sense of time, space, and direction was bewildered by intoxication, might drive the distance which the deceased is shown to have followed the creek, before driving over the bank. All of this was before the jury, and I do not think any one can say, certainly not I, that they reached the conclusion they did through the influence of passion or prejudice, or that their verdict is contrary to the law, or unsustained by the evidence in the case.

It only remains to consider points seven and eight of plaintiffs in error's petition in error, which are as follows:

"7.   That said court erred in refusing to give to the

jury each of the instructions asked for by the plaintiffs in error, which are numbered 3, 4, and 6."

"8. That said court erred in tearing off and refusing to give to the jury the last part of instruction numbered 1, asked for by plaintiffs in error, as follows, to-wit: 'And unless you find each and all of these four propositions to be established by a preponderance of evidence, it will be your duty to return a verdict in favor of the defendants.'"

Instructions numbered 3, 4, and 6, asked for by the defendants in the court below and refused by the court, are as follows:

"3. Any defendant that is not shown by a perponderance of the evidence to have, on the thirteenth day of October, 1881, sold or given intoxicating liquor to the deceased in quantities sufficient to produce intoxication, or when the deceased was under the influence of liquor, is entitled to a verdict in his favor.

"4. Unless you find from a preponderance of the evidence that the deceased, at the time of missing his road and driving down to the creek where his death occurred, was then in a state of intoxication, it will be your duty to return your verdict in favor of the defendants.

"6. If from the evidence you believe it to be equally probable that on the evening of October 13, 1881, the deceased would have missed his road and the accident have occurred that resulted in his death, if he had not drank intoxicating liquor on that day at all, then it will be your duty to return your verdict in favor of the defendants."

We have already seen that the proposition couched in the first of the above instructions, numbered three, is not the law. The liability of the individual defendants does not depend upon his having furnished deceased sufficient liquor on that day to intoxicate him, or while he was under the influence of liquor, but was complete if he furnished him liquor that contributed to his intoxication, provided

he was intoxicated and lost his life in consequence of such intoxication.

As to the second above instruction, numbered four, it is faulty in that it makes it necessary, in order to the liability of the defendants, that deceased should have been *proved* to have been intoxicated at the very moment of the accident. This is not the law. If he was intoxicated when he lost his way, and lost it in consequence of such intoxication, but afterwards became sober, and in an effort to regain the road drove over the bank to his death, the fatal result was nevertheless caused by his intoxication.

My objection to the last of the above instructions, numbered six, is, that it asks the jury to leave the well-beaten track of fact and proof and wander away into the field of probability. And again, it invites a comparison between a supposed probability and a matter of known fact—a region of investigation which no jury need enter.

The following instruction was also asked by plaintiffs in error:

"1. The plaintiffs are not entitled to a verdict for damages against the defendants, or either of them, unless it is established by a preponderance of the evidence, 1, that John Bauer, deceased, was, on the thirteenth day of October, 1881, furnished with intoxicating liquor by the defendants or some one or more of them, or by their clerks acting for them; 2, that deceased was on that day intoxicated; 3, that deceased continued to be intoxicated up to the time of missing his road and driving down to the creek where his death occurred; 4, that his being intoxicated was the cause of his death."

The above was given, but there was also attached thereto the following: "And unless you find each and all of these four propositions to be established by a preponderance of the evidence, it will be your duty to return your verdict in favor of the defendants;" which latter portion was by the court detached and refused to be given to the jury.

I think that the plaintiffs in error had all to which they were entitled out of these instructions.   They had their four propositions of law given in the exact language in which they were presented.   The words refused were simply a reiteration or emphasizing of that already given.   It added nothing to it as matter of law; and, had it been given, it might have been regarded by the jury as a sort of endorsement from the court of the relative importance of what was contained in the propositions which went before. That it should not have this effect, was doubtless the reason why the court refused to give it.   In this, I think the court committed no error.

As nothing is said in the brief of plaintiffs in error upon the point of excessive damages, I suppose that point to be waived.

Upon the whole I think that the case was fairly presented to the jury, and that their finding is fully sustained by the evidence and the law of the case.   The judgment of the district court is affirmed.   BY the court,

JUDGMENT AFFIRMED.