Whipple v. Rosenstock.

Martha W. Whipple, appellee, v. John H. Rosenstock et al., appellants.

Filed December 23, 1915.   No. 18518.

1. Intoxicating Liquors: Loss of Support: Right of Action.  A married woman and her minor children consisting of one family may maintain an action for loss of means of support against all those who have furnished intoxicating liquors to the husband and father, which occasioned or contributed to the damages.

2. ———: ———: Damages.  In estimating the damages, the jury may consider the situation of the deceased, his annual earnings, if any, his habits, health, and reasonable expectancy of life.

3. ———: ———: ———.  The right of support is not limited to the bare necessaries of life, but in no case can the judgment be for a greater sum than the value of the means of support of which plaintiff has been deprived.

4. ———: ———: Action for Damages: Abatement.  The death of the husband and father does not cause an action for loss of means of support to abate, the death being a mere incident, not the principal cause of action.

5. ———: ———: ———: Defense.  "A license is no protection to a vendor of intoxicating drinks in an action for loss of the means of support.  The statute, in effect, says to every one engaged in the traffic, 'Beware to whom you sell or furnish intoxicating liquor.'" Roose v. Perkins, 9 Neb. 304.

6. ———: ———: ———: Parties.  The bondsmen of the liquor dealers who have furnished intoxicating liquors to the husband and father may be joined with the liquor dealers as defendants in an action for the loss of support.

7. ———: ———: Damages.  Evidence examined, and held that a verdict for $10,000 was excessive, and the amount of recovery is reduced to the sum of $5,000.

Appeal from the district court for Lancaster county: P. James Cosgrave, Judge.  Affirmed on condition.

T. J. Doyle, for appellants.

Burkett, Wilson & Brown, contra.

BARNES, J.

The plaintiff commenced this action against John H. Rosenstock, Alexander Butz, Charles A. Schwedop and Leonard Bauer, who were licensed saloon-keepers in the city of Lincoln, and their bondsmen, to recover damages which she alleged had accrued to herself and her two infant children by reason of the sale of intoxicating liquor to her deceased husband, Frederick H. Whipple. The action as originally commenced was against the persons and bondsmen above named, together with some others.

It was alleged in the petition that from January 1, 1912, the saloon-keepers therein named had sold, given to, and furnished her husband, Frederick H. Whipple, with large quantities of intoxicating liquors, which he drank, and thus had caused him to become intoxicated, debauched and an habitual drunkard; that her husband had abused her and neglected to furnish any support for herself and minor children; that before he became so debauched he was kind to her and had furnished his family suitable support in the way of food and clothing; that by reason of the use of the intoxicating liquors so sold, given and furnished him by defendants, he became sick and diseased in mind and body, and died on the 18th of August, 1912, of an injury to his arm, complicated by delirium tremens, and by reason of which she and her children had sustained damages in the sum of $20,000, for which she prayed judgment.

The defendants answered separately. Each of the saloon-keepers denied that he had sold, furnished or given plaintiff's husband any intoxicating liquors, denied that Whipple was a sober and industrious man, and alleged that for many years he had been a confirmed drunkard. They denied that plaintiff had been damaged in her means of support by reason of any sales of liquor made by them to her husband; and the answers further denied that plaintiff was the wife of Frederick H. Whipple. They admitted that they were licensed saloon-keepers doing business in the city of Lincoln, and denied all the other allegations

of the petition.   The reply was a general denial of the facts alleged in the answers.

When the case came on for trial in the district court for Lancaster county, and after plaintiff had introduced her evidence, the action was dismissed as to all of the defendants other than the saloon-keepers above mentioned and their sureties.   The petition was amended so as to allege the sale to Whipple of intoxicating liquors from the 1st day of May, 1912, to the 15th day of August of that year, and the case was finally submitted to the jury as to such sales alone.   After all of the evidence had been introduced, instructions were given, which were excepted to by each of the defendants.   The jury returned a verdict in favor of the plaintiff and against all of the defendants for the sum of $10,000, on which the court rendered judgment, and the defendants have appealed.

It is contended by the appellants that the evidence is insufficient to sustain a verdict for the plaintiff.   The record fairly shows that each one of the defendant liquor-dealers sold and furnished to plaintiff's deceased husband intoxicating liquors, including beer, at some time during the period from the 1st day of May to the 15th day of August, 1912; that Frederick H. Whipple died on the 18th day of August, 1912, as alleged in plaintiff's petition. While there is some conflict in the evidence, that branch of the case was properly submitted to the jury.   Under the provisions of chapter 40, Rev. St. 1913, as construed by the decisions of this court, the verdict of the jury on that question should be sustained.   The saloon-keepers were jointly liable on their bonds for whatever damages the plaintiff may have sustained by reason of the traffic. *Roose v. Perkins*, 9 Neb. 304; *Kerkow v. Bauer*, 15 Neb. 150; *Warrick v. Rounds*, 17 Neb. 411; *Gorey v. Kelly*, 64 Neb. 605.   The cases cited also dispose of the appellant's claim of misjoinder adversely to their contention, as will presently be seen.

It is strenuously contended that the verdict in this case was excessive.   There seems to be merit in this contention.

It appears from the record that the plaintiff and Frederick H. Whipple were married on the 28th day of June, 1904; that two children were born to them, both of whom are living, and at the time of the trial were aged five and eight, respectively; that at the time of the marriage the plaintiff's husband had employment as a buggy washer at the Palace livery stable in the city of Lincoln. The amount of his earnings at that time is not shown, but it is apparent that they were not large. It also appears that at the time he was addicted to the use of intoxicating liquors, but not to the extent of destroying his ability to work. For some time he had no steady employment, but worked at different places in the city and in private families; and his earnings did not exceed $35 a month. It also appears that about four years before his death Whipple became an itinerant peddler of horseradish, peanut butter, hominy and some other household articles of food. There is no evidence in the record as to the amount of his earnings while he was engaged in that business, but it seems clear that they must have been limited to a rather small sum. A little later on Whipple commenced to prepare horseradish and hominy on his own account. This was peddled, together with icecream, popcorn, pop and some other things which he purchased of the manufacturers. These articles were peddled by him from about the first day of June until the latter part of September of each year. The record also shows that he sold hominy, horseradish and peanut butter a great part of the year. The plaintiff testified that he made in his business $150 a month, but that was purely her opinion without any competent evidence to support it. She also testified that he furnished for the support of his family, $25 a week. That testimony was also her opinion, and is not supported by any other evidence. The testimony of the grocer of whom Whipple bought his groceries was that his bills ran from $3.50 to $5 a week, but he was unable to state that Whipple bought all his meats and foods from him. It may be presumed that, while Whipple had credit at the

grocery and ran a weekly account, he bought practically all of his supplies from him. There is no evidence in the record as to how much or what kind of clothing Whipple furnished his family. Plaintiff testified that after the 1st of January, 1912, he furnished them nothing, and that the only money she was able to obtain from him was $5. The record clearly shows that Whipple at all times during the last ten years was an habitual user of intoxicating liquors; that his drinking had increased by January, 1912, to such an extent that he was unable to attend to his business; that just before his death he was trying to sell his wagon and outfit for $40; that his business had become unprofitable; that he procured intoxicating liquors in bottles and jugs from some place other than that disclosed by the testimony, and kept intoxicating liquors in his house, his wagon and other places; that he drank to such an extent that on the evening of the 14th day of August, 1912, he fell and broke his arm; that his wife helped him into the house, undressed him, and put him to bed; that on the morning of the 15th a physician was called, who dressed the arm and sent him to a hospital, where he remained until the afternoon of the 17th of August, when he was sent home because of his conduct; that when he arrived at the house he became wild and incoherent and developed symptoms of delirium tremens; his conduct was such that his wife was afraid of him, and he was taken to a room in the county jail, where he died on the morning of August 18, 1912.

A the time of Whipple's death he was 54 years of age and had a life expectancy of 18 years. Considering the evidence contained in the record, we are of the opinion that the verdict was excessive; that by Whipple's death plaintiff and her children could not have been damaged in their means of support in any sum exceeding $5,000.

The amount of plaintiff's recovery having been reduced to the penalty mentioned in a single bond furnished by the sureties there can be no contention of a misjoinder of of parties defendant. Plaintiff therefore is required to

file a remittitur in the sum of $5,000 within 20 days, and, if this is done, the judgment of the trial court will be affirmed for that amount, with the costs of that court; otherwise, the judgment will be reversed and the cause remanded.

AFFIRMED ON CONDITION.

LETTON, J., not sitting.