## McLAIN *v.* HOWALD.

1. WILLS—CONSTRUCTION.

> A testamentary gift, to take effect upon the termination of a life estate in the widow, of a specified sum to "each of the children" of a named daughter, includes not only the children in being at the death of the testator, but those born subsequently during the lifetime of the widow.

2. SAME—CHILD EN VENTRE.

> A child *en ventre sa mere* at the termination of the life-estate is also entitled to take under the will.

Appeal from Hillsdale; Chester, J. Submitted April 5, 1899. Decided May 23, 1899.

Bill by Ora S. McLain and others, infants, by Julian A. Palmer, their next friend, against John Howald, administrator *de bonis non*, with the will annexed, of the estate of Samuel Helsel, deceased, and Jacob Helsel, Elias Helsel, and Edwin Spitler, residuary legatees, for a construction of said will. From a decree dismissing the bill, complainants appeal. Reversed.

*W. D. Fast*, for complainants.

*Spencer D. Bishopp*, for defendants.

Hᴏᴏᴋᴇʀ, J.    Samuel Helsel died leaving a will, as follows:

"That I, Samuel Helsel, of Amboy, Hillsdale Co., Michigan, being of sound mind and aged seventy-two years, do hereby make and declare this to be my last will and testament:

"*First.* In the event of my death, I give and bequeath to my wife during her natural life, or during her widowhood, all my real estate, wherever situated, to use, occupy, and have all of the benefit to be derived therefrom; also I hereby give or devise to my wife two horses and harness and wagon, and all farming tools, two cows, all household goods, to be stipulated same as the real estate; my wife to keep the farm and buildings in good repair and pay all taxes during her occupancy, as above stipulated.

"In the event of the death of my wife, or her remarrying, I hereby direct that my property shall be disposed of as follows, to wit:

"To my son Josiah's children, I hereby give or bequeath the sum of one hundred dollars.

"To my daughter Rebecca, I give one hundred dollars.

"To my daughter Elizabeth, I give one hundred dollars, to be divided between her two children equally.

"To my son Samuel Helsel's child, I give fifty dollars (child's name Elizabeth).

"To my daughter Catherine's two children, I give one hundred and fifty dollars each.

"To my daughter Mary Ann, I give to each of her children one hundred dollars.

"To my sons Elias and Jacob and to Edwin Spitler, I hereby give all the remainder of my estate, to be divided equally between them, share and share alike; and I hereby direct that all personal estate that I may die possessed of shall be disposed of and held until the event of the death or remarrying of my wife, and then divided as above stipulated, excepting that already mentioned and arranged for above in this will; the farm to be well taken care of, and no timber used or cut except what may be necessary for the use thereof, in keeping in repair."

Mary Ann Helsel had six children. Two were born before the testator's death, and these have been paid $100 each. Three were born after the testator's death, and before the death of the testator's widow, the life tenant, and one was born a few days after her death. The last

four claim to be entitled to the sum of $100 each, under the clause contained in the will, *i. e.*, "to my daughter Mary Ann, I give to each of her children one hundred dollars;" and the bill is filed by them for a construction of the will.

It is contended that the intention that each child of Mary Ann who was then in existence, or who might be in existence before the time fixed for distribution, should receive $100, is fairly deducible from the will. A cogent argument in support of this proposition is the following, taken from the brief of counsel:

"Now, the question is, Did Mr. Helsel intend that the children who might be born after his death to Mary Ann, and before the period of distribution, should take, under his will, $100 each? We answer, 'Yes,' because he very clearly limited and designated the legatees in all of the preceding legacies, except the one to Josiah's children, to whom he gave $100. In all the other bequests he absolutely limited the gift to the number designated and the child named. He went so far as to mention the name of the child of his son Samuel Helsel. And from this we conclude that he intended all of the children of Mary Ann in being at the period of distribution should take under this clause, in view of the fact that he had postponed the time of enjoyment of the legacies till the event of the remarrying or death of his widow. * * * Edward L. McLain was born in the same month the life tenant died. In law, a child is considered born, for all beneficial purposes, while in the mother's womb. * * * Therefore he takes as well as the others, under this clause."

While it cannot be disputed that it is the policy of the law to treat estates and rights in property as vested, when practicable (see *Doe* v. *Considine*, 6 Wall. 458), there are cases where such rights must give way in favor of other persons. "Thus, where a gift to a class is to take effect after the testator's death, the estate given will be cut down by the birth of others who come within the description before the period or event upon which the gift is to take effect or the distribution is to be made; such will be included as within the probable intention of the

testator." In *McArthur* v. *Scott*, 113 U. S. 340, a gift to grandchildren was held to include any grandchild of the testator who might be born after the testator's death, and before the time of distribution fixed by the will. See, also, *Doe* v. *Considine*, 6 Wall. 458, where it is held that although the estate be vested under the devise, to take effect in enjoyment at a future period, the estate vests in persons as they come *in esse*, subject to opening and letting in others as they are born afterwards. In the case of *Hall* v. *Hall*, 123 Mass. 124, it was said:

"It is a testamentary gift to a class of persons, which is made by the testator to take effect at a period beyond the time of his death; and the general rule applies that those who come within the description before the period or event upon which the gift is to take effect or the distribution is to be made will be included as within the probable intention of the testator." *Fosdick* v. *Fosdick*, 6 Allen, 41; *Worcester* v. *Worcester*, 101 Mass. 128; *Hatfield* v. *Sohier*, 114 Mass. 48.

In the case quoted from, the court were of the opinion that the grandchildren took contingent interests, which did not immediately vest; but, as we have seen from the case of *Doe* v. *Considine*, the same result would be reached if it were otherwise.

In *Worcester* v. *Worcester*, *supra*, it was said:

"When it [a testamentary gift] is postponed beyond the time of his [the testator's] death, then those who come within the description before the period or event upon which the gift is to take effect or the distribution is to be made will ordinarily be included as within the probable intention of the testator."

There is a class of cases which hold that, when a construction of the will that will let in children who are born after the death of the testator has the effect to defer the distribution of the estate, it should not be indulged, and in such cases those children will not be considered within the testator's intention. *Ringrose* v. *Bramham*, 2 Cox, Eq. Cas. 384, is such a case, and children born after the testator's death were excluded because, inasmuch

as each additional child increased the amount to be taken from the estate under the provision in question, the distribution of the testator's personal estate would have to be postponed until the amount of such legacies could be so ascertained. That case distinguished the case of *Gilmore* v. *Severn,* 1 Brown, Ch. 582, where the amount of the fund was fixed, and was not dependent upon the number of beneficiaries. *Storrs* v. *Benbow,* 2 Mylne & K. 46, supports this doctrine; also, *Butler* v. *Lowe,* 10 Sim. 322.

But in all of these cases the birth of the claimant occurred after the period fixed for distribution, so we need not conclude from them that the death of the testator necessarily determines the rights of the children. If the right to have the property distributed at once existed, such would be the rule; but, if such right was definitely and certainly fixed by a subsequent date or contingency, the rule might be different, because, until that time arrived, the effect of letting after-born children in would not be to postpone the date of distribution. Hence such cases are not within the rule, because not within the reason of the rule. Accordingly, we have cases which, at first blush, might seem at variance with this principle, but which are not, because of the deferred time for distribution. In *Mann* v. *Thompson,* Kay, 645, the time was indefinite. The case of *Myers* v. *Myers,* 2 McCord, Eq. 214, contains a discussion of this distinction. In short, until the time for distribution arrives, unborn children are in the same position, when the gross amount of the legacies depends upon the number of legatees, as they are where a gross sum is bequeathed, and the aliquot parts are to depend upon an indefinite number of legatees. The right of the unborn to a portion of such a fund is recognized in *Knorr* v. *Millard,* 57 Mich. 268. We are therefore of the opinion that the court erred in dismissing the complainants' bill, as we think the three children who were born before their grandmother died were entitled to take under the will.

Can the same be said of the fourth, who was born after

the death of the widow? She died March 4th, and the child Edward was born before April 1st of the same year. For all purposes of construction, a child *en ventre sa mere* is.considered as a child *in esse*, if it will be for its benefit to be so considered. This rule was established in *Doe* v. *Clarke*, 2 H. Bl. 399. In *Clarke* v. *Blake*, 2 Ves. Jr. 673, it was held that, under a devise to all of the children of A. except B., a posthumous child was entitled to take. See, also, *Pierson* v. *Garnet*, 2 Brown, Ch. 47; *Cooper* v. *Forbes*, Id. 63; *Freemantle* v. *Freemantle*, 1 Cox, Eq. Cas. 248. "The child *en ventre* is supposed to be actually born at the period of distribution." See, also, *Mogg* v. *Mogg*, 1 Mer. 654; *Rawlins* v. *Rawlins*, 2 Cox, Eq. Cas. 425. 10 Am. & Eng. Enc. Law, 624, treats such children as *in esse;* citing numerous authorities in support of the text. This is in accord with our own statutes (2 How. Stat. §§ 5546, 5784, 5809, 5847). *Chambers* v. *Shaw*, 52 Mich. 21; *Catholic Benefit Ass'n* v. *Firnane*, 50 Mich. 82. It may be that these statutes do not in terms cover this case, but they are in harmony with the settled rule when they declare that "posthumous children are considered as living at the death of their parents." Section 5784. And it is held that such children may sue for an injury or loss sustained while *en ventre sa mere*. 27 Am. & Eng. Enc. Law, 420, and note. We feel justified, by these authorities, in saying that Edward McLain, being *in esse*, though *en ventre sa mere*, at the time of the death of the life tenant, was entitled to take under the will with his older brothers and sisters.

It follows that the decree must be reversed, and a decree entered in this court in accordance with the prayer of the bill; costs of both courts to be paid out of the estate.

The other Justices concurred.