ALICE P. GOULDING, Guardian, Appellant, v. PHILLIPS and LANSING, JAMES PHILLIPS and THOMAS LANSING.

Damages for sale of liquor: RIGHTS OF ILLEGITIMATE CHILD. A child,
1   injured in its means of support by reason of a parent's intoxication, may maintain an action for damages against the vendor of the liquor, whether such child is born in lawful wedlock or not.

Evidence: RES GESTÆ. Statements made several hours after a death
2   occurs, regarding the cause of the death, are too remote to constitute a part of the *res gestæ.*

Instructions: INTEREST OF WITNESS. An instruction that in determin-
3   ing the cause of a death, the jury may consider the situation and relation of the parties and their interest in the case, which fails to limit the consideration thereof to the weight of their testimony, is misleading.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

WEDNESDAY, JULY 13, 1904.

THIS suit was brought by the plaintiff, as the guardian of Marguerite A. Goulding, to recover damages caused by the sale of intoxicating liquor to George K. Goulding, the father of Marguerite A. Goulding. There was a trial to a jury, and a verdict and judgment for the defendants. The plaintiff appeals.— *Reversed.*

*Rickel, Crocker & Tourtellot,* for appellant.

*Jamison & Smyth,* for appellees.

SHERWIN, J.— The plaintiff herein, Alice P. Goulding, and George K. Goulding were married about 1882, and lived together as husband and wife until his death, in October, 1897. Marguerite A. Goulding is the daughter of the plaintiff and the deceased, and lived with them and was supported and recognized by the deceased from her birth until his death. After the death of George K. Goulding, it was shown in legal proceedings that the plaintiff was not his legal wife, because of the fact that a former wife was living from whom he had not been divorced. It was also conclusively shown at the same time and in the same proceedings, as it was in the trial of this case, that during the life of George K. Goulding, he had fully recognized Marguerite A. Goulding as his child.

This suit is bottomed upon section 2418 of the Code, which, so far as is material to this case, is as follows: " Civil Action for Damages by Wife, Child, Parent, Guard-

1. DAMAGES FOR SALE OF LIQUOR: rights of illegitimate child.

ian," etc. " Every wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person, shall have a right of action in his or her own name against any person who shall, by selling or giving to another, contrary to the provisions of this chapter, any intoxicating liquors, causing the intoxication of such person, for all damages actually sustained, as well as exemplary damages." There can be no question as to the right of action under this statute. It is expressly given to any person who shall be injured in person, property, or means of support; and, if it were necessary to hold the ward an illegitimate, the action could still be maintained, because of this express language of the statute. But no issue was raised as to the legitimacy of this ward, and had

there been, it could not have availed the defendants, because of the undisputed facts in the case, and because of the statute (Code, section 2250). By the common law, it is the duty of parents to support their minor children. This duty is. said by Blackstone to be founded on a principle of natural law; that by begetting them " they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus children will have the perfect right of receiving maintenance from the parents." 1 Blackstone Commemntaries 447. This duty has been held to be a legal, as well as a moral obligation. *Porter v. Powell,* 79 Iowa, 151; *Johnson v. Barnes,* 69 Iowa, 641; *Dawson v. Dawson,* 12 Iowa, 513. In England, by the statutes of Elizabeth and George II, the parents were bound to maintain the illegitimate child, and compulsory means were adopted against them both; and, under our own statute (Code, section 2250), the putative father of an illegitimate child is chargeable with its support. See, also, title 25, chapter 50, of the Code. As we have seen, there was full recognition of the child during the life of the deceased, and she was therefore legitimatized by him, and stood in the same relation to him as though born to him in lawful wedlock, and he was legally bound for her support. *State v. Hastings,* 74 Iowa, 574. In any view of the case, then, the action is maintainable for the child; and the court should have instructed the jury that if Marguerite Goulding was found to be the child of the deceased, it was immaterial to her right to recovery whether she was born in lawful wedlock or not.

Instruction 4 given by the court, in effect, confined the right of recovery to the fact of recognition, and was therefore erroneous, though perhaps not prejudicial, because of the undisputed showing of recognition.

There was an attempt to show that the deceased died from the effects of morphine administered by the plaintiff

through mistake or design, the evidence in support of which was in the form of statements alleged to have been made after the death of Goulding by the plaintiff and Dr. G. E. Fosberg. These statements, if made, were made several hours after the death of Goulding, and were to the effect that an overdose of the drug had been given to him by mistake several hours before his death. They were clearly not so closely near as to be directly occasioned or evoked by the transaction, and were therefore not a part of the *res gestæ*. 1 Greenleaf, sections 108, 109; *State v. Deuble,* 74 Iowa, 509. Instruction 5 asked by the plaintiff should therefore have been given, and that part of instruction 12 given by the court which told the jury that it might consider statements made at the death of George K. Goulding as a part of the transaction was prejudicially erroneous, because there was no evidence that any such statements were made at that time.

<span style="margin">2. EVIDENCE: res gestæ.</span>

There was error in admitting the testimony of the witness Fisher that the deceased was unable to pay his debts while living in Ottawa, Ill. It was clearly hearsay and incompetent.

The court instructed that in determining whether the death of Mr. Goulding was caused by intoxication, or was produced by other causes, the jury might take into consideration the situation and relation of the parties, and their interest or lack of interest in the case. We think this instruction was misleading, at least. Such facts may be considered by the jury in weighing the testimony of the witnesses, but the instruction did not limit the consideration to this question, but permitted the jury to consider the interest of the witness in determining whether Goulding died from the effects of alcoholism or from the effects of morphine poisoning; and this, we think, was error.

<span style="margin">3. INSTRUCTIONS: interest of witness.</span>

Other errors are argued, but, as they are not likely to

arise on a retrial of the case, we need not consider them further.

For the errors designated, the judgment is REVERSED.