MARGUERITE PHAIR ET AL., APPELLEES, V. SAMUEL G. DUMOND ET AL., APPELLANTS.

FILED FEBRUARY 5, 1916. No. 18580.

1. **Intoxicating Liquors:** ACTION FOR LOSS OF SUPPORT: PARTIES. An action for loss of means of support caused by the death of a person in consequence of, or as the result of, traffic in intoxicating liquors, may be maintained by the children of the deceased, under the liquor laws of the state. *Roose v. Perkins,* 9 Neb. 304.

2. ———: ———: DEFENSE. Where whiskey sold or given by a
saloon-keeper contributes to a resulting intoxication, it is imma-
terial in what manner or from whom the drinker obtained the
other liquor which helped to cause the condition.

3. ———: ———: LIABILITY ON BOND: RIGHTS OF CHILD. During
incapacity caused by habitual drunkenness of her husband, a wife
supported her minor children by her own labor. She afterwards
died as the result of an assault committed upon her by the hus-
band while drunk. *Held*, that a child born after the assault may,
after the death of the mother, recover for loss of means of sup-
port upon the bond of a liquor dealer who contributed to the in-
toxication of the husband at the time he committed the assault.

APPEAL from the district court for Valley county: JAMES
R. HANNA, JUDGE. *Affirmed.*

*T. J. Doyle* and *Claude A. Davis,* for appellants.

*E. P. Clements* and *A. Norman, contra.*

LETTON, J.

This action was brought by the guardian of two minor
children to recover damages caused by loss of their means
of support alleged to have been caused by the sale of in-
toxicating liquor by defendant Dumond to Orval Phair,
their father, on May 22, 1908. Dumond was a licensed
saloon-keeper in the city of Ord. at that time. The other
defendant is the surety upon his bond.

Two causes of action are set forth in the petition. The
first alleges that Phair was an habitual drunkard in May,
1908, and that during the license year from the 1st of
May, 1908, to the 1st of May, 1909, defendant furnished
and sold Phair liquor to such an extent that he became de-
bauched and depraved, and incapable of supporting his
family; that he was arrested many times for drunkenness,
and was sentenced to a term in the penitentiary on account
of an offense committed while in that condition, and that
the plaintiffs will be deprived of their sustenance during
the time he is confined. The second cause of action charges
that on the 22d of May, 1908, Jennie Phair, the mother of
the plaintiffs, was a strong, healthy woman, capable of
earning $500 a year; that on that day Dumond furnished

intoxicating liquors to Phair, which caused him to become intoxicated, and that while intoxicated he assaulted her, threw her upon the ground, kicked her in the side, and so injured her that she died as a direct result of said injury; that by reason of the injury and death of their mother, who during Phair's incapacity on account of habitual drunkenness and imprisonment had worked for money and supported them, the plaintiffs were deprived of her care and support, and that they have no property or estate.

The evidence and verdict establish the following facts: Phair was married in Ord, in March, 1905. He was a moderate drinker before he was married, but afterwards he became addicted to the use of liquor to excess, had prior to the fall of 1907 become a confirmed and habitual drunkard, and had repeatedly been arrested and committed to jail for offenses committed while drunk. In September, 1907, with his family, he removed to Central City, Nebraska. In this town there were no saloons, and Phair refrained from drinking to excess, was a steady worker, and supported his family. Mrs. Sower, the mother of Mrs. Phair, who lived at Ord, was taken sick early in May, 1909, and Mrs. Phair came from Central City to take care of her. On the evening of May 22 Phair came to Ord. He went into the saloon of defendant, asked for and was given a drink of whiskey by Dumond, and bought and drank another glass. Dumond stepped out of the room, and while he was gone Phair stole the bottle from which he had been served, with some whiskey in it. Soon after he went to the house of Mrs. Sower, created a disturbance, and, upon his wife attempting to quiet him, he pulled her out of the house, assaulted her and kicked her in the side. Officers were called. When they reached the house Phair and Mrs. Phair had gone. Upon making a search they found Mrs. Phair lying upon the ground beyond a railroad embankment not far away; Phair having run away. Her dress was torn, and she appeared to have suffered a shock. She was assisted to her mother's house, and upon examination it was found that her side was bruised, swollen and

much discolored just above the hip. The doctor who attended her testified there were bruises all over her body that night when he was called. She was pregnant and suffered a miscarriage about a month afterward. After this miscarriage her side would swell at intervals of three to five weeks; she would suffer from dull pains in her head and would seem somewhat stupified. A discharge would then occur of blood and pus, and she would apparently recover until the recurrence of the same symptoms. She continued to live with her mother for over a year after the injury, when she went back to her husband and lived with him until August 20, 1910. At about this time Phair was arrested and sent to the penitentiary. On October 25, 1910, she gave birth to one of the plaintiffs, Clara E. Phair. After the birth of the child the trouble with her side recurred. On Sunday, May 9, 1911, she had a similar attack to those she formerly had, except that she had a severe chill. She gradually became unconscious, an eruption broke out over her body which was diagnosed as a septic inflammation, and she died upon the following Wednesday. Previous to the assault Mrs. Phair had been a strong, healthy, young woman, had borne one child and had never had a miscarriage. Several physicians testified that in their opinion her death was due to septic poisoning, proceeding from a pus cavity which resulted from the assault made by her husband; that the cavity would periodically fill with pus which would force a passage and close again. Other physicians testified that in their opinion if this condition existed it would be impossible for a woman to conceive and bear a healthy child as Mrs. Phair did. There is evidence enough to sustain a verdict based upon the proposition that the assault produced the septic conditions which caused her death.

More than 40 assignments of error are made, and many of the instructions given by the court are attacked. The law in cases of this nature has been repeatedly declared by this court and the charge of the court seems in the main to be in accordance with settled principles.

One of the principal complaints made is that the second cause of action, which was based upon loss of support furnished by Mrs. Phair to her children, cannot be maintained after her death by the children, but can only be maintained by the administrator of Mrs. Phair in a separate action for her death. This precise question has been settled in this state against the appellant's contention. *Gran v. Houston,* 45 Neb. 813; *Fitzgerald v. Donoher,* 48 Neb. 852; *Murphy v. Willow Springs Brewery Co.,* 81 Neb. 223.

Another complaint is that, since the guardian was given power to relinquish the care of the children to the Nebraska Children's Home Society by the county court and had relinquished their persons to such society, she was not competent to act in their behalf. The guardian had been regularly and legally appointed and has never been discharged. It is not shown that any adoption of the children had taken place or that any other guardian or caretaking agency had ever been appointed. The court will not presume that she will misappropriate any fund belonging to these children, and the mere relinquishment of their personal care does not deprive her of control over their estate. Furthermore, the action could be maintained by the plaintiff as next friend. The objection is merely to a matter of form and is not sustained.

It is strongly urged that, since the intoxication of Phair resulted from the drinking of whiskey in the stolen bottle, the defendant is not liable. The evidence shows that Dumond furnished two glasses of whiskey to Phair before the bottle was stolen. The whiskey sold and given contributed to the resulting intoxication. This is sufficient under the statute.

The argument that, because the system of Phair had become so weakened by drunkenness before May 22, 1908, he was worthless to his family, and that therefore recovery could not be had for failure to support his children thereafter, is unsound. Phair had for months before that day abstained from drinking to excess and had supported his family in Central City. He was set upon the old path by

the liquor furnished by Dumond and he never left it afterward. Instruction No. 6 told the jury that if they believed Phair was an habitual drunkard and failed to support his family before May 22, 1908, no compensation should be given for the want of earning capacity or squandering his earnings resulting from his condition as it was before that date. Instructions 18 and 19 protect defendant's interest in this behalf. The instructions fairly submit the questions presented by the pleadings and the evidence.

It is said that instruction No. 13, which told the jury that, if the whiskey sold by Dumond contributed to intoxicate Phair, it is not material how he obtained the liquor that completed the intoxication, "has no support in principle or precedent," and "is shocking to every true conception of right and wrong." By section 3862, Rev. St. 1913, it is provided that, in such an action as this, it is only necessary to prove that the defendant gave liquor to the person whose acts are complained of on the day when the acts were committed, and that, in an action by one whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold liquor to such person during the period of disqualification. This court has consistently held from the first that each licensed vendor who contributes to the intoxication is liable. Granted that the stolen whiskey completed the intoxication, it is clear that the liquor drank in the saloon contributed to produce it. *Gorey v. Kelly,* 64 Neb. 605; *Kerkow v. Bauer,* 15 Neb. 150.

Summons was issued for defendant Dumond on February 27, 1912. There was no indorsement on this of any amount for which plaintiffs would take judgment if defendant failed to appear. An alias summons bearing such an indorsement was issued and served on November 14, 1912. It is argued that as to Dumond the action was barred by the statute of limitations before the latter summons was served. One of the plaintiffs was not *in esse* and the other was under disability when the cause of action

accrued, and the guardian was not appointed until a short time before the suit was begun. Under section 7576, Rev. St. 1913, the action was not barred.

The evidence shows that Mrs. Phair supported her children by her own earnings up till the time of her death.

It is contended that, since Clara E. Phair was not born until October, 1910, while the sale of liquor was made in May, 1908, no action can be maintained by her or in her behalf. The statute (Rev. St. 1913, sec. 3859) provides: "The person so licensed shall pay all damages that the community or individual may sustain in consequence of such traffic, he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to, his traffic in intoxicating liquors."

In an action of this nature in Indiana it was held that a posthumous child could recover. *State v. Soale*, 36 Ind. App. 73. It was held in *Nelson v. Galveston, H. & S. A. R. Co.*, 78 Tex. 621, that a posthumous child was within a statute giving a right of recovery to "surviving children." In *Roach v. Wolff*, 96 Neb. 50, a child was held entitled to recover damages for the death of the father, even though the mother, suing for herself and another child, had already recovered on account of the same death. We think the provisions of our statute broad enough to include any child who has been deprived of its support in consequence of the traffic.

A number of other complaints are made; but, since we are of the opinion that the trial was fairly conducted and the verdict is supported by the evidence, the judgment of the district court is

AFFIRMED.