LABLUE v. SPECKER.

1. Appeal and Error—Motion to Dismiss—Pleading.
    All well-pleaded facts in plaintiff's amended declaration must be considered as true on an appeal from order granting defendants' motion to dismiss.

2. Words and Phrases—Child—Person.
    A child, even a child *en ventre sa mere,* is regarded as a person.

3. Infants—Posthumous Children—Action for Injury or Loss.
    Posthumous children are considered as living at the death of their parents and may sue for an injury or loss sustained while *en ventre sa mere.*

---

References for Points in Headnotes
[1] 41 Am Jur, Pleading § 238 *et seq.*
[2] 27 Am Jur, Infants § 3.
[3] 16 Am Jur, Death § 95.
[4] 27 Am Jur, Infants § 3; 7 Am Jur, Bastards § 69.
    Nonstatutory duty of father to support illegitimate child. 30 ALR 1069.
[5] 16 Am Jur, Death § 330.
[6, 7] 27 Am Jur, Infants § 3.
[8] 30 Am Jur, Intoxicating Liquors § 526.
[9, 10] 27 Am Jur, Infants § 3.
[11] 30 Am Jur, Intoxicating Liquors § 549.
[12] 30 Am Jur, Intoxicating Liquors § 525.

4. BASTARDS—POSTHUMOUS CHILD.
     A posthumous illegitimate child is dependent upon its father
     for support (CLS 1956, § 722.712).

5. PARENT AND CHILD—DETERMINATION OF DEPENDENCY.
     Questions of dependency of children should be determined in
     accordance with the fact, as the fact may be at the time of
     injury.

6. INFANTS—CHILD EN VENTRE SA MERE—CIVIL RIGHTS.
     The civil rights of a child *en ventre sa mere* are equally respected
     at every period of gestation.

7. INTOXICATING LIQUORS—CONSTRUCTION OF STATUTES—POSTHU-
   MOUS ILLEGITIMATE CHILD.
     An illegitimate and acknowledged child *en ventre sa mere*, born
     201 days after putative father, a minor, was killed in an auto-
     mobile accident while allegedly driving while intoxicated from
     liquor claimed to have been illegally sold him by defendants,
     is a dependent person within the meaning of the terms "child"
     or "other person" in the civil damage act, even though she may
     not have reached status of viability at time of father's death
     (CLS 1956, §§ 436.22, 722.712).

8. SAME—CONSTRUCTION OF STATUTES—CIVIL DAMAGE ACT.
     The true legislative intent of the civil damage act is to be
     obtained by a liberal construction of it, not by any strained
     or narrow construction of the words employed (CLS 1956,
     § 436.22).

9. INFANTS—POSTHUMOUS CHILDREN.
     Posthumous children are regarded as *in esse* from the time of
     conception, at least where it will be for the benefit of such
     child to be so considered.

10. SAME—CHILD EN VENTRE SA MERE—LEGAL SEPARABILITY.
     The fact that a fetus may not live if its mother's protection and
     nourishment are cut off earlier than the viable stage of its
     development does not destroy its legal separability from the
     mother commencing at biological separability, conception.

11. INTOXICATING LIQUORS—CIVIL DAMAGE ACT—CHILDREN AS PLAIN-
   TIFFS—LEGITIMACY OF BIRTH.
     It is immaterial to the right of a child for purposes of maintain-
     ing an action under the civil damage act whether the child
     was born in lawful wedlock or not (CLS 1956, § 436.22).

12. SAME—PURPOSE OF CIVIL DAMAGE ACT.
> The object of the civil damage act is to save the public from
> a burden which would have injured them in property (CLS
> 1956, § 436.22).

Appeal from Marquette; Jackson (Glenn W.), J. Submitted October 6, 1959. (Docket No. 11, Calendar No. 47,949.) Decided January 4, 1960.

Case under the civil damage act by Earl LaBlue, guardian of Deborah Johnson, an infant, against Paul Specker and George Calhoun, doing business as The Harvey Inn, because of illegal sale of intoxicants to John LaBlue, a minor, contributing to his death prior to the time of a contemplated marriage between the infant's mother and John LaBlue, the infant's putative father. Declaration dismissed on motion. Plaintiff appeals. Reversed and remanded.

*Baldwin & Kendricks* (*Roscoe W. Baldwin*, of counsel), for plaintiff.

*McGinn & Fitzharris*, for defendants.

KAVANAGH, J. Plaintiff brought an action in circuit court based upon part of CLS 1956, § 436.22* (Stat Ann 1957 Rev § 18.993), which authorizes those who have been injured in person or property, means of support or otherwise, by an intoxicated person to bring an action against the person who shall by reason of unlawful selling or furnishing of in-

---

* "Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury."

toxicating liquor to said person cause or contribute to his intoxication.

Plaintiff is the guardian of Deborah Johnson who was born March 8, 1957. Deborah is the illegitimate daughter of Sharon Johnson, an unmarried woman.

Plaintiff alleges in his amended declaration that Sharon Johnson and John LaBlue became engaged some time prior to Deborah's conception in June of 1956 and LaBlue subsequently acknowledged himself as the father of Deborah. Plaintiff further alleges that LaBlue and Sharon Johnson agreed to be married on or about September 1, 1956, and had made arrangements for such forthcoming marriage, which would have occurred but for LaBlue's death on August 19, 1956.

Plaintiff contends that on the night of August 18, 1956, LaBlue, a minor, purchased intoxicants at defendants' place of business and following such illegal sale LaBlue was killed in an automobile accident on the early morning of August 19, 1956. Plaintiff also claims the accident was the result of LaBlue's driving in a careless and negligent manner due to his intoxicated condition. Plaintiff finally alleges his ward, Deborah Johnson, suffered extensive damages of loss of support which she would have enjoyed if LaBlue had not been killed.

Defendants filed a motion to dismiss plaintiff's amended declaration for the following reasons: (1) The child at the time of the accident was not "another person" under CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993). (2) The child at the time of the accident was not yet born and was not then viable. (3) John LaBlue was not obligated to support the child after its conception and before the death of LaBlue. (4) There had been no liability legally established to charge John LaBlue for the support of said child. (5) The court was without

jurisdiction. (6) The amended declaration did not state a cause of action. (7) John LaBlue in his lifetime did not in any way or manner contribute to the support of said child, and said child has not been injured in means of support by reason of the death of John LaBlue.

The circuit judge filed a written opinion granting the motion to dismiss, resting his decision principally upon *Newman* v. *City of Detroit,* 281 Mich 60, and *Westfall* v. *J. P. Burroughs & Son,* 303 Mich 186.

Plaintiff appeals and raises 2 questions:

"1. Is plaintiff a 'child' or 'other person' within the meaning of CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993)?

"2. Has plaintiff been injured in her means of support within the provisions of CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993)?"

Since this is an appeal from an order granting the motion to dismiss the amended declaration, we must consider as true all well-pleaded facts in the amended declaration.

In 70 CJS, Person, p 688 appears the following:

"A child is regarded as a person, and sometimes a child *en ventre sa mere* is considered to be a person, although it has been indicated that the mother must be quick with the child in order for the child to be so regarded. In other cases it has been stated that a child becomes a person when born. An unborn child has been considered to be a 'person' within the meaning of a constitutional guaranty providing that the courts shall be open to every person as stated in 16A CJS, Constitutional Law, § 709, subd a."

The term *"en ventre sa mere"* is defined in Black's Law Dictionary (4th ed), p 619, as follows:

"In its mother's womb. A term descriptive of an unborn child. For some purposes the law re-

gards an infant *en ventre* as in being. It may take a legacy; have a guardian; an estate may be limited to its use, et cetera."

*Williams* v. *Marion Rapid Transit, Inc.,* 152 Ohio St 114 (87 NE2d 334, 10 ALR2d 1051), decided on July 13, 1949, is authority for the position that an unborn child is a "person" within the constitutional provision giving every "person" a remedy for injury done him in his person, so as to permit a child after her birth to bring a personal injury action against a bus company.

This Court has held that "for all purposes of construction, a child *en ventre sa mere* is considered as a child *in esse,* if it will be for its benefit to be so considered." *McLain* v. *Howald,* 120 Mich 274, 279 (77 Am St Rep 597). This was a case which involved a will contest. Later in the same case the Court said (p 279):

"It may be that these statutes do not in terms cover this case, but they are in harmony with the settled rule when they declare that 'posthumous children are considered as living at the death of their parents.' Section 5784.* And it is held that such children may sue for an injury or loss sustained while *en ventre sa mere.* 27 Am & Eng Enc Law, 420, and note."

This Court held to the same effect in *Catholic Mutual Benefit Association* v. *Firnane,* 50 Mich 82, and *Chambers* v. *Shaw,* 52 Mich 18.

In 13 ALR 686, under an annotation entitled " 'Dependency' within Workmen's Compensation Act", the author states on p 706:

"A posthumous child, according to the general presumption that such a child is to be regarded

---

* The provisions of How Stat, § 5784, CL 1915, § 11807 *post,* were re-enacted in 1939 in the probate code. See CL 1948, § 702.85 (Stat Ann 1943 Rev § 27.3178 [155]).—REPORTER.

as born already, if it is for his benefit, may rank as a dependent. *Williams* v. *Ocean Coal Co.,* [1907] 2 KB 422 (76 LJKB NS 1073, 97 LT 150, 23 Times LR 584, 9 WCC 44). The father of a posthumous illegitimate child had, before his death by accident, recognized the paternity of the child to be born, and arranged to marry the mother, and support her and the child. On a claim for the child as a dependent, it was held, applying the rule laid down in *Williams's Case, supra,* and assuming the child as born, that there was clear evidence that in this case the child was dependent. *Orrell Colliery Co.* v. *Schofield,* [1909] AC 433 (78 LJKB NS 677, 100 LT 786, 25 Times LR 569, 2 BWCC 294), affirming [1909] 1 KB 178 (78 LJKB NS 150, 100 LT 104, 25 Times LR 106, 2 BWCC 301)."

In the *Orrell Colliery Co.* v. *Schofield Case, supra,* a workman, who had admitted that he was the father of a child *en ventre sa mere* and had promised to marry the mother and intended to provide for the child, was killed in an accident for which his employers were liable to pay compensation. The child was born some months afterwards. The court held the child was a "dependent" within the meaning of the workmen's compensation act, 1906, and entitled to compensation. In affirming the court of appeals, the House of Lords said (pp 434, 435):

"I will only say this much in regard to the language in the statute which requires that a person shall be dependent on the earnings of the deceased workman at the time of his death. In nearly all cases the practical question will be that which was put by Mr. Russell, namely, whether or not assistance of one kind or another has been given out of the earnings of the deceased workman, but it may be that a person so situated that he might reasonably count upon assistance from those earnings, and probably would need it, ought in the circumstances

of the case to be included among the dependents referred to in the statute."

The facts of the case at bar are almost identical to those of the *Orrell Colliery Co. Case,* the exception being the causes were brought under different statutory provisions.

A Michigan case dealing with the right to compensation under the workmen's compensation act is *King* v. *Peninsular Portland Cement Co.,* 216 Mich 335, where the Court said (p 340):

"As to the child Margaret, born after the death of decedent, it has been repeatedly held that posthumous children are entitled to compensation due as the result of the death of a parent. By the terms of CL 1915, § 11807, it is provided that posthumous children are considered as living at the death of their parents. *Catholic Mutual Benefit Association* v. *Firnane,* 50 Mich 82; *Chambers* v. *Shaw,* 52 Mich 18; *Knorr* v. *Millard,* 57 Mich 265, 268; *McLain* v. *Howald,* 120 Mich 274 (77 Am St Rep 597).

"A child *en ventre sa mere* is totally dependent upon its parents for nourishment.

"In accordance with the general presumption that a posthumous child is to be regarded as born already, if it be for his benefit, such child may rank as a dependent. *Williams* v. *Ocean Coal Co.,* [1907] 2 KB 422 (76 LJKB NS 1073, 97 LT 150, 23 Times LR 584, 9 WCC 44); note, 6 NCCA 260.

"In New Jersey it is held that a posthumous illegitimate child is dependent upon its father for support, within the meaning of the workmen's compensation law of that State. *Klimchak* v. *Ingersoll Rand Co.,* 39 NJLJ 275."

In a later case involving a question of right to compensation under the Michigan workmen's compensation act, it was held that the fact that the child was a posthumous illegitimate child was not suf-

ficient for denial of her day in court. *Westfall* v. *J. P. Burroughs & Son*, 280 Mich 638.*

In the case of *Ide* v. *Scott Drilling, Inc.*, 341 Mich 164 (7 NCCA3d 219), involving a workmen's compensation claim, this Court said (p 166):

"It should be noted that 'questions of dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury.' In *King* v. *Peninsular Portland Cement Co.*, 216 Mich 335, we held that a posthumous child was considered as living at the time of the father's fatal injury and entitled to dependency compensation as a result of the death of its parent."

Continuing on pp 167, 168, Justice Sharpe, speaking for the Court, said:

"In *Routh* v. *List & Weatherly Construction Company*, 124 Kan 222 (257 P 721, 62 ALR 150), Routh was injured August 1, 1925. A child was born to his wife March 12, 1926, and Routh died July 4, 1926. The question of dependency of the unborn child at the time of Routh's injury was the principal question in that case. In reversing the judgment of the trial court to one in favor of plaintiff the court said (pp 224, 225):

" ' "For certain purposes, indeed for all beneficial purposes, a child *en ventre sa mere* is to be considered as born. * * * It is regarded as *in esse* for all purposes beneficial to itself, but not to another. * * * Formerly, this rule would not be applied if the child's interests would be injured thereby, * * * but, for the purpose of the rule against perpetuities, such a child is now regarded as a life in being, even though it is prejudiced by being considered as born. * * * Its civil rights are

---

* It should be mentioned that this case was later dismissed upon rehearing in *Westfall* v. *J. P. Burroughs & Son*, 303 Mich 186, because there was no evidence of the child's dependency on its father as provided in the workmen's compensation act.

equally respected at every period of gestation." 1 Bouvier, Law Dictionary, p 1038.

" ' "A child *en ventre sa mere* at the time of the father's death is deemed to have been born so far as it is for the benefit of such child, and will be entitled to claim compensation as a legal dependent, providing the child is legitimate; and the · posthumous child of a deceased workman would have the same rights to compensation as other children." Harper, Workmen's Compensation (2d ed), p 261.

" ' "Where the father of the unborn child of an unmarried woman publicly expressed his intention to marry the woman and 4 days prior to the marriage, was killed, it was held that the child was entitled to an award for total dependency." 1 Schneider, Workmen's Compensation Law, p 961.

" 'We conclude that the plaintiff is a dependent within the meaning of the law and entitled by her guardian to maintain an action in this case as such.'

"Under the facts in the case at bar we conclude that a child *en ventre sa mere* is a person in being and as such is a dependent."

Courts in the field of criminal law have long recognized a child's legal existence while *en ventre sa mere,* 3 Burdick, Law of Crime, § 858, pp 265–267, and a change has been noted with respect to criminal abortion in that in late years statutes have been amended doing away with the requirement that the woman must be quick with child.  3 Burdick, Law of Crime, § 868, p 282.*

Having treated a posthumous child as a person under a constitutional requirement for purposes of inheritance under the workmen's compensation act and in the field of criminal law, it would appear that

---

* "Yet, without the aid of statutes which now have generally done away with the requirement that in criminal abortion the woman must be quick with child, and provide that the crime may be committed upon any pregnant woman, a few American cases have held that regardless of 'quickening' the offense may be committed at any time during gestation."

we should examine how the Michigan Court and other courts have construed civil damage or dramshop act provisions.

In *Eddy* v. *Courtright*, 91 Mich 264, 267, this Court said:

"This Court has always construed this statute liberally, and has not deemed that the true legislative intent was to be ascertained by any strained or narrow construction of the words employed."

The Court then proceeded to cite other cases as illustrative of the fact that the Court has uniformly given a liberal construction to the language of the act. *King* v. *Haley*, 86 Ill 106 (29 Am Rep 14); *Thomas* v. *Dansby*, 74 Mich 398; *Doty* v. *Postal*, 87 Mich 143.

In *Flower* v. *Witkovsky*, 69 Mich 371, the Court held that under the statute giving a right of action to "every wife, child, parent, guardian, husband, or other person" injured by an intoxicated person, the words "or other person" were intended to cover all persons so injured.

In *McDaniel* v. *Crapo*, 326 Mich 555, it was held "or other persons" as used in the statute included a partnership. The Court said (p 558):

"Both under the statute quoted and under a former similar statute, the words 'or other persons' have been given a broad interpretation. *Flower* v. *Witkovsky*, 69 Mich 371, and *Hylo* v. *Michigan Surety Co.*, 322 Mich 568."

An annotation in 64 ALR2d, beginning on p 705 and entitled "Right to recover under civil damage or dramshop act for death of intoxicated person", contains the following statement (p 710):

"However, where acknowledgment or affiliation of an illegitimate child imposes a legal duty of support on the father, an acknowledged illegitimate

child may maintain an action based on injury to his means of support caused by the death of his intoxicated parent. It has also been recognized that a divorced wife receiving support payments under court order, and a posthumous child, may maintain an action for the injury to their means of support resulting from the death of an intoxicated person."

On pp 715, 716, of the annotation, the author states:

"And where a civil damage act provided a right of action to every wife, child, parent, guardian, employer, or other person who should be injured in person or property or means of support by any intoxicated person, it was held in *Goulding* v. *Phillips* (1904), 124 Iowa 496 (100 NW 516), that an action could be maintained for the benefit of an illegitimate child of the deceased, who was alleged to have died from the effects of alcoholism, where such child had been recognized as his own by the deceased, and where by statute the putative father of an illegitimate child was chargeable with its support. Obiter, the court said that even if the child were held to be an unrecognized illegitimate offspring, the action could still be maintained, because the statute gave a right of action to 'every  *  *  * other person' injured."

In a case involving the right of illegitimate children to be entitled to workmen's compensation, the Court in *Roberts* v. *Whaley,* 192 Mich 133, 138 (LRA 1918A, 189), said:

"But it is said they are illegitimate children, and that the law will not encourage the immoral and unlawful relation of the parents by recognizing them. The children are in no wise responsible for their existence or status. They are here, and must be cared for and supported."

The case primarily relied upon by defendants and the lower court in its opinion is *Newman* v. *City of*

*Detroit,* 281 Mich 60. In the *Newman Case* decedent's administrator brought an action under the survival act for damages due to alleged prenatal injuries causing death of plaintiff's decedent. The injuries to decedent's mother occurred 22 days prior to decedent's birth at the end of a normal gestation period. These injuries resulted in decedent's death 3 months after his birth. The Court in denying any relief said the overwhelming weight of authority denied liability, cited numerous cases in support of that statement, and followed it with a one-sentence conclusion (p 64):

"Plaintiff has no cause of action under the common law or under any statute."

While the statement made by Justice Butzel, in September of 1937 when this case was decided, was true that the overwhelming weight of authority denied liability, the situation with respect to the law has changed considerably since that time.

10 ALR2d 1059 contains an annotation dealing with grounds of action for prenatal injuries. The annotator writes as follows (p 1060):

"The law has looked upon an unborn child as *in esse* for many purposes beneficial to the child. A child *en ventre sa mere* is regarded as capable of taking a legacy or devise. The word 'children' or 'issue,' as used in a bequest, may include a child *en ventre sa mere.* And with respect to the right of inheritance, posthumous children are regarded as *in esse* from the time of conception. In criminal law, one who feloniously inflicts injuries upon an unborn child, which is born alive but subsequently dies from the injuries, is chargeable with homicide as in the case of the killing of any human being."

The annotator goes on to say (p 1060):

"The important and novel question has arisen as to whether the solicitude of the law for the protec-

tion of unborn infants against the criminal conduct of others and as to inheritance and property rights extends to the protection of such infants against the torts of others."

In 27 ALR2d 1256, in a supplement to the 10 ALR 2d 1059 annotation, at p 1259, the annotator writes as follows:

"It appears worthy to· note that at the present time there are 10 jurisdictions in which a right of action for prenatal injuries has been denied and 7 in which such an action has been recognized. However, the fact that 6 jurisdictions out of 7 in the past several years have recognized such an action indicates a definite trend away from the more orthodox view. In the seventh jurisdiction, Massachusetts, the court in *Bliss* v. *Passanesi* (1950), 326 Mass 461 (95 NE2d 206), felt bound by the earlier case of *Dietrich* v. *Northampton* (1884), 138 Mass 14 (52 Am Rep 242), in which such a right of action was denied, but the court was careful to note that it did not intimate what its decision would have been if the question were presented for the first time."

In the case of *Hornbuckle* v. *Plantation Pipe Line Co.*, 212 Ga 504 (93 SE2d 727), the court held that where a child is born after a tortious injury sustained at any time after conception, he has a cause of action. The court felt that at what particular moment after conception, or at what particular period of prenatal existence of child, the injury was inflicted is not controlling, for, in general, a child is to be considered as in being from time of conception, where it will be for the benefit of such child to be so considered. Quoting from an earlier Georgia case (*Tucker* v. *Howard L. Carmichael & Sons*, 208 Ga 201 [65 SE2d 909]), the court said (p 504):

" 'It would be contrary to every principle of right and justice, which are the very essence of law, to deny such rights to the injured child.' "

In the case of *Kelly* v. *Gregory,* 282 App Div 542*
(125 NYS2d 696), the court said (pp 543, 544):

"While the point at which the fetus becomes viable
has been of usefulness in drawing some legal dis-
tinctions, the underlying problem that has usually
troubled the judges who have written on the subject
of recovery for prenatal injuries, has been in fixing
the point of legal separability from the mother.

"We ought to be safe in this respect in saying
that legal separability should begin where there is
biological separability. We know something more
of the actual process of conception and fetal devel-
opment now than when some of the common-law
cases were decided; and what we know makes it pos-
sible to demonstrate clearly that separability begins
at conception.

"The mother's biological contribution from con-
ception on is nourishment and protection; but the
fetus has become a separate organism and remains
so throughout its life. That it may not live if its
protection and nourishment are cut off earlier than
the viable stage of its development is not to destroy
its separability; it is rather to describe conditions
under which life will not continue. Succeeding con-
ditions exist, of course, that have that result at
every stage of its life, postnatal as well as prenatal.
The complaint here, in alleging that plaintiff was in
being in the third month of his mother's pregnancy,
alleges a conclusion of fact consistent with generally
accepted knowledge of the process.

"The logic of some of the cases sustaining the
right of recovery where the injury occurred after

* The New York court in *Drobner* v. *Peters* (1921), 232 NY 220
(133 NE 567, 20 ALR 1503), with Justice Cardozo dissenting, sup-
ported the view denying a child right of recovery. In 1951 the same
court overruled *Drobner* v. *Peters* in the case of *Woods* v. *Lancet,* 303
NY 349 (102 NE2d 691, 27 ALR2d 1250), and held that an infant
that suffered prenatal injuries during the ninth month of his mother's
pregnancy was held to have a cause of action against the alleged
wrongdoer. The court, however, limited its holding to injuries to
viable children. The present rule established in *Kelly* v. *Gregory*
eliminates the necessity of viability.

the fetus was viable seems to be that if at the instant of injury the fetus were outside the womb it could live and would then be treated at law as an individual in being. But no case imposed as a necessity the concomitant condition that actual miscarriage must coincide with the injury. Hence the basis of separability discussed was often a theory rather than a fact."

The court subsequently went on to say (p 545):

"If the child born after an injury sustained at any period of his prenatal life can prove the effect on him of the tort, as for the purpose of this appeal and on the face of the complaint before us we must assume plaintiff will be able to do, we hold he makes out a right to recover."

The New Hampshire court has recently held that an infant born alive can maintain an action to recover for prenatal injuries even if it had not reached the state of a viable fetus at the time of the injury. *Bennett* v. *Hymers,* 101 NH 483 (147 A2d 108). In the *Bennett Case* the court said (p 485):

"We adopt the opinion that the fetus from the time of conception becomes a separate organism and remains so throughout its life. Also that the mother's biological contribution from conception on is to furnish nourishment and protection for it. And the fact 'that the fetus may not live if its protection and nourishment are cut off earlier than the viable stage of its development is not to destroy is separability; it is rather to describe conditions under which life will not continue.' *Kelly* v. *Gregory, supra;* 27 Am Jur, Infants, § 3, p 747; Maloy, Legal Anatomy and Surgery, p 668."

The court also said (p 486):

"Our holding, that if a child born alive after an injury sustained at any period of its prenatal life can prove the damage was caused by the tort it

makes out a right to recover, is in accord with certain recent judicial opinions, modern medical science and the view of many writers on the law of torts. *Kelly* v. *Gregory, supra; Hornbuckle* v. *Plantation Pipe Line Co., supra;* Maloy, Legal Anatomy and Surgery, *supra* (p 668). See Prosser, Torts, p 175; 2 Harper and James, Law of Torts, § 18.3, pp 1028-1031; 19 NACCA LJ 230-239; 63 Harv L Rev 173; 31 NYU L Rev 359; 48 Mich L Rev 539; 39 Cornell LQ 542."

In the case of *Goulding* v. *Phillips & Lansing,* 124 Iowa 496 (100 NW 516), the court held a child, injured in its means of support by reason of a parent's intoxication, may maintain an action for damages against the vendor of the liquor, whether such child is born in lawful wedlock or not. In the *Goulding Case* the Iowa dramshop or civil damage statute read, in part, as follows (p 497):

" 'Every wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person, shall have a right of action.' "

The court said (p 497):

"There can be no question as to the right of action under this statute. It is expressly given to any person who shall be injured in person, property, or means of support; and, if it were necessary to hold the ward an illegitimate, the action could still be maintained, because of this express language of the statute."

On p 498 the court continued:

"In any view of the case, then, the action is maintainable for the child; and the court should have instructed the jury that if Marguerite Goulding was found to be the child of the deceased, it was immaterial to her right to recovery whether she was born in lawful wedlock or not."

In the case of *Phair* v. *Dumond,* 99 Neb 310 (156 NW 637), the court held that a child born after an assault may, after the death of the mother, recover for loss of means of support upon the bond of a liquor dealer who contributed to the intoxication of the husband at the time he committed the assault. The court said (p 316):

"In an action of this nature in Indiana it was held that a posthumous child could recover. *State, ex rel. Niece,* v. *Soale,* 36 Ind App 73 (74 NE 1111). It was held in *Nelson* v. *Galveston, H. & S. A. R. Co.,* 78 Tex 621 (14 SW 1021, 11 LRA 391, 22 Am St Rep 81), that a posthumous child was within a statute giving a right of recovery to 'surviving children.' In *Roach* v. *Wolff,* 96 Neb 50 (146 NW 1022), a child was held entitled to recover damages for the death of the father, even though the mother, suing for herself and another child, had already recovered on account of the same death. We think the provisions of our statute broad enough to include any child who has been deprived of its support in consequence of the traffic."

In 30 Am Jur, Intoxicating Liquors, § 526, p 825, is found the following:

"While it has been said that civil damage or dramshop acts are penal in character and should, according to well-understood canons, be strictly construed, the better view is that they are remedial in character and should be beneficially, construed so as to suppress the mischief and advance the remedy."

In *Bonnarens* v. *Lead Belt R. Co.,* 309 Mo 65 (273 SW 1043), although not involving a civil damage statute, it was nevertheless held that a posthumous child born 3-1/2 months after the death of its father, whose death was attributable to defendant's negligence, was entitled to recovery for such death. The court said (pp 74, 75):

"It is insisted that the cause of action accrued at the time of the death of Bonnarens and the right of action vested in those only who survived at that time; hence plaintiff, being a posthumous child, does not come within the terms of the statute and is not entitled to prosecute this action. There is no merit in this contention.

"In *Aubuchon* v. *Bender,* 44 Mo 560, 569, Judge Bliss said: 'The principle is broadly and clearly stated by Chancellor Walworth in *Marsellis* v. *Thalhimer,* 2 Paige (NY) 35, 39, 40. The court there says: "It is at this day a well-settled rule of law relative to successions, and to most other cases in relation to infants, that a child *en ventre sa mere,* as to every purpose where it is for the benefit of the child, is to be considered *in esse.*" "It was for some time doubted whether such a child could take a contingent remainder before its birth. The question was finally settled," et cetera, citing *Reeve* v. *Long.**
"It is now settled both in England and here that the infant, after conception but before its birth, is *in esse,* for the purpose of taking the remainder or any other estate or interest which is for the benefit of the infant." '

"In *Nelson* v. *Galveston, H. & S. A. R. Co.,* 78 Tex 621, 624 (14 SW 1021, 11 LRA 391, 22 Am St Rep 81), it is said: 'After giving the right to sue for actual damages on account of injuries causing the death of a person, our statute (Art 2903 of Revised Statutes) provides: "The action shall be for the sole and exclusive benefit of the surviving * * * children * * * of the person whose death shall have been so caused," ' et cetera. * * * After reviewing the English decisions construing Lord Campbell's act, the court concludes: 'We think, also, that the plaintiff in this case, although unborn at the time of his father's death, was in being and one of his surviving children.' See, also, *Phair* v.

---

* See the 2 cases, *Reeve* v. *Long,* 1 Salk 227 (90 Eng Rep 1025) reversed in the House of Lords, 3 Lev 408 (83 Eng Rep 754), and the recorded dissatisfaction of the judges.—REPORTER.

*Dumond,* 99 Neb 310 (156 NW 637); *Herndon* v. *St. Louis & S. F. R. Co.,* 37 Okla 256 (128 P 727); 17 CJ, Death § 62, p 1216."

Applying the present condition of the law to the instant case, we hold that the plaintiff's ward was a "child" or "other person" within the meaning of CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993), even though she may not have reached the status of viable fetus at the time of the death of her father. We recognize that there may be difficulty in proving causation and that such a holding may give rise to fictitious claims. However this difficulty and danger are not peculiar to this type of action and do not appear to be so much greater than in the case of many other matters of medical opinion on the causal sequence of events. Our holding in this regard is that if such a person can prove the damage, he makes out a right to recover. This is in accord with recent judicial opinions and modern medical science. See Prosser, Torts, p 175; 2 Harper and James, Law of Torts, § 18.3, pp 1028–1031; 19 NACCA LJ 230–239; 63 Harv L Rev 173; 31 NYU L Rev 359; 48 Mich L Rev 539; 39 Cornell LQ 542.

CLS 1956, § 722.712 (Stat Ann 1957 Rev § 25.492) provides as follows:

"(a) The parents of a child so born out of wedlock are liable for the necessary support and education of the child. They are also liable for the child's funeral expenses. The father is liable to pay the expenses of the mother's confinement, and is also liable to pay such expenses in connection with her pregnancy as the court in its discretion may deem proper.

"(b) If the father dies, an order of filiation or a judicially approved settlement made prior to his death shall be enforceable against his estate in the same manner and way as a divorce decree."

Whether Deborah Johnson's mother, who may well be legally responsible for her support, is in a financial position to support her is a question that can only be decided on the trial of the case. If plaintiff's ward is dependent upon public welfare and is in need of support, this fact can be determined by the evidence in the case.

In *Clinton* v. *Laning,* 61 Mich 355, 360, the Court said:

"The object of the statute (liquor law) is to save the public from a burden which, in the language of the statute, would have injured them in property."

Assuming that the guardian would be able to prove the facts alleged in his declaration, that John LaBlue had acknowledged that he was the father of Deborah Johnson, and assuming that proof of damage and dependency can be shown, it is clear that a cause of action exists.

The order granting the motion and dismissing the cause must be reversed, and the matter referred to the circuit court for further proceedings. Costs in favor of plaintiff-appellant.

SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred with KAVANAGH, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in result.