**Ericka R. ROBINSON, Personal Representative of the Estate of Norris Maben, Deceased; and Norris Maben, Deceased, Plaintiffs,**

v.

**Marvin Edward FIEDLER, jointly and severally; City of Benton Harbor, a Michigan municipal corporation, jointly and severally, Defendants.**

No. 1:92–CV–51.

United States District Court, W.D. Michigan, Southern Division.

Sept. 28, 1994.

Frank Mafrice, Stephen N. Leuchtman, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, Alphonse Lewis, Jr., Grand Rapids, MI, for Ericka R. Robinson, Norris Maben.

Thomas E.S. Tiderington, Piatt, Bartosiewicz, Tiderington & Kimbrel, P.C., Kalamazoo, MI, for Marvin Edward Fiedler.

John H. Dise, Jr., Farber, Downs, Dise & Irving, Gina Ursula Puzzuoli, Margaret T. Debler, Dise & Gurewitz, P.C., Detroit, MI, for City of Benton Harbor.

John E. Dewane, Butzbaugh & Dewane, St. Joseph, MI, Michael D. Marrs, Michael D. Marrs, P.C., Stevensville, MI, for Darmeasia Maben.

John E. Dewane, Butzbaugh & Dewane, St. Joseph, MI, for Norris S. Maben, Jr.

Alphonse Lewis, Jr., Grand Rapids, MI, for Benita G. Maben Fields, Diane Maben Singleton, Velvet J. Maben, R.B. Maben, Jr., John F. Kennedy Maben, Lester Maben, Carlton L. Maben, Levon Maben, Essie Maben, R.B. Maben.

## OPINION

QUIST, District Judge.

This Court has addressed several issues in the distribution of a wrongful death settlement amount in this 42 U.S.C. § 1983 action, with appended state tort and constitutional claims, brought on behalf of Norris Maben, deceased. Still pending before the Court is the issue of whether Norris Maben Jr., who was born after Norris Maben was killed, is the son of the decedent and, if so, whether he can receive wrongful death damages. The costs and attorneys' fees to be paid out of the settlement and the dollar amounts to be distributed to the decedent's daughter, mother, and siblings must also be determined. On June 8, 1994, this Court issued a Memorandum Opinion declaring that Darmeasia Maben is the natural daughter of the decedent and is entitled to recover wrongful death damages on the basis of a filiation order entered during Norris Maben's lifetime. On June 10, 1994, this Court issued an Order holding that the firm of Sommers, Schwartz, Silver, & Schwartz, P.C., which represented Ericka Robinson, the personal representative of the estate of Norris Maben, was entitled to receive a contingency fee as provided in its contract with Ericka Robinson, decedent's personal representative, and that attorney Alphonse Lewis was not entitled to attorney's fees from the estate prior to distribution to the various claimants, not all of whom

are represented by Mr. Lewis. The settlement amount totals $350,000.

Plaintiff Ericka R. Robinson, the personal representative of the estate of Norris Maben and the mother of Darmeasia Maben and Norris Maben Jr., seeks damages for both of her children. She requested that the funds be distributed as follows:

| | |
|---|---|
| Attorneys' fees | $124,761.58 |
| Norris Maben, Jr., son | $ 84,464.40 |
| Darmeasia Maben, daughter | $ 84,464.41 |
| Balance to be divided among remaining family members | $ 56,309.61 |

Norris Maben's mother and siblings, who oppose plaintiff's proposed distribution, have filed a claim for $2,000,000.00 (docket no. 38) and have objected to the amount of the settlement. The children, Norris Maben, Jr. and Darmeasia Maben, are represented by guardians ad litem (GALs) who have filed claims of $100,000 on behalf of each of the children (docket nos. 61 and 64). The GAL for Norris Maben, Jr., in his post-hearing brief filed July 18, 1994, requests that, after costs and attorney fees (including the GAL fees) have been taken from the settlement amount, the remainder be distributed one third to Darmeasia, one third to Norris Jr., and one third to the mother and siblings of decedent.

### Procedure for Distribution of the Settlement

The instant case included both civil rights claims, pursuant to 42 U.S.C. § 1983, and wrongful death claims pursuant to the Michigan wrongful death statute, M.C.L.A. § 600.2922. Distribution of the settlement under the federal as well as the state claims is governed by Michigan's wrongful death act because there is no federal wrongful death statute that provides a remedy. 42 U.S.C. § 1988 instructs that where the federal law is unsuited or insufficient to "furnish suitable remedies" in a Section 1983 action, a court should be governed by "the common law, as modified and changed by the constitution and statutes of the [forum] Stat." 42 U.S.C. § 1988; *Robertson v. Wegmann*, 436 U.S. 584, 588–89, 98 S.Ct. 1991, 1994–95, 56 L.Ed.2d 554 (1978).

Michigan's wrongful death act affords a remedy lacking in federal law. It also sets forth the procedure for approving and distributing a settlement. The wrongful death statute provides that, upon motion of a personal representative, the court in which the wrongful death action is pending must approve or reject a proposed settlement. It states:

If, for the purpose of settling a claim for damages for wrongful death where an action for those damages is pending, a motion is filed in the court where the action is pending by the personal representative asking leave of the court to settle the claim, the court shall, with or without notice, conduct a hearing and approve or reject the proposed settlement.

M.C.L.A. § 600.2922(5).

The District Court for the Western District of Michigan has interpreted the wrongful death statute to require that, when an action is pending in this Court, in addition to approving or disapproving the settlement, this Court must distribute the settlement proceeds under the procedures set forth in Section 600.2922(5)–(6) if it approves the settlement. *Addington v. Honda Motor Company*, 5:93–cv–46, slip op. at 3 (W.D.Mich. September 7, 1993).

Section 600.2922(6)(d) provides that "[a]fter a hearing by the court, the court shall order payment" of certain expenses and "then enter an order distributing the proceeds to those persons designated under subsection (3) who suffered damages ... in the amount as the court or jury considers fair and equitable considering relative damages sustained by each of the persons and the estate of the deceased."

Subsection 3 of Section 600.2922 provides that proceeds may be distributed to any of the following who suffered damages:

(a) The deceased's spouse, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of the death of the deceased.

To determine who should receive the proceeds of the settlement, this Court must thus

determine the relationship of the claimants to the decedent, decide whether the various claimants have or will suffer damages by the death of Norris Maben, and determine the amount that each claimant should be paid to compensate for those damages. The only remaining relationship issue in dispute is whether Norris Maben, Jr. is the child of decedent. Norris Jr. was born on May 22, 1990, four months after Norris Maben's death on January 18, 1990.

### Determining Paternity

On May 18, 1994, this Court heard testimony concerning the claim of Norris Maben Jr. and Darmeasia Maben for distribution of settlement proceeds. At that hearing, Ericka Robinson and two other witnesses testified that the decedent lived with Ericka Robinson from the summer of 1989 until his death on January 18, 1990. There is no evidence that the decedent had a job, earned any money by legal means, or paid anything toward Darmeasia's support pursuant to the filiation order. There was testimony, however, that the decedent was an attentive father to Darmeasia, bringing her presents and buying diapers.

Ericka and other witnesses also testified that the decedent was aware of Ericka's second pregnancy, acknowledged that the child was his, was pleased, and hoped it was a boy. The hospital records accepted into evidence at the hearing support this claim, showing that Ericka reported at a prenatal checkup on November 30, 1989, that the father of the baby was very pleased with the pregnancy. The hospital records also show that Ericka went into the hospital on December 15 with labor pains. At that time, hospital personnel filed out an Obstetric Admission Assessment form on which the box for "husband in delivery" was checked "yes" and the name "Norris" written in.

Following the May 18 hearing, this Court filed its Memorandum Order holding that Darmeasia was the daughter of decedent on the basis of the filiation order entered into evidence at the hearing.

At the continuation of the hearing on July 11, 1994, the attorney for the mother and siblings called two witnesses to refute the claim that Norris Jr. was the son of decedent. Neither witness refuted the claims that the decedent lived with Ericka or that he acknowledged he was the father of the child she was carrying. Carlton Maben, one of decedent's brothers, supported the claim that Norris was living with Ericka by testifying that when he was looking for Norris, he would go over to Ericka's house. In addition, he testified that when Ericka went into the hospital with labor pains in December, Norris took Darmeasia to his mother's house, where Carlton was living, and then took Ericka to the hospital.

The record thus contains persuasive, unrefuted evidence that Norris Maben Jr. is the natural child of the decedent. The GAL for Norris Jr. requested blood tests to provide further support for his claim but this Court deems further evidence unnecessary in light of the uncontroverted evidence already in the record.

### Distribution to Illegitimate Children Under Michigan's Wrongful Death Act

A straight-forward reading of the Michigan wrongful death statute, M.C.L.A. § 700.2922(3), suggests that, once paternity is established, the issue of whether the natural children of a decedent may receive proceeds from a wrongful death settlement is resolved because subsection 3 includes "children" in the list of those who may be entitled to damages. A recent decision by the Michigan Court of Appeals, however, restricted recovery to persons who can inherit from the decedent through intestate succession. *Matter of Estate of Renaud,* 202 Mich.App. 588, 509 N.W.2d 858 (1993), *appeal denied,* 519 N.W.2d 154 (Mich.1994). The *Renaud* court held that the list of persons in Section 2922(3)(a) can only be interpreted in accordance with the laws of intestate succession and, thus, that individuals who cannot inherit under the intestate laws cannot receive damages under the wrongful death act. 202 Mich.App. at 590, 509 N.W.2d at 859.

In *Renaud,* the claimant, who was the natural daughter of the decedent, had been adopted by her mother's new husband. Thus, the parental relationship between the

claimant and the decedent had been terminated. The claimant did not seek to receive wrongful death damages as a "child" of the decedent. She did claim, however, that she remained a "descendant" of the decedent and could recover under that category. Instead of focusing on whether a child who has been adopted should recover wrongful death damages from the death of a person whose paternal rights were terminated, the Court of Appeals interpreted the wrongful death statute as a whole by analyzing the legislative history of the 1985 amendment. The court quoted the House Legislative Analysis Section, House Bills 4486 and 4487, July 22, 1985, which stated that the legislature was concerned that a Michigan Supreme Court decision, *Crystal v. Hubbard,* 414 Mich. 297, 324 N.W.2d 869 (1982), had " 'expanded the class of persons entitled to recover beyond what is reasonable, and what attorneys and courts can reasonably handle.' " 202 Mich. App. at 590–91, 509 N.W.2d at 859. On this basis, the court concluded that the legislature was motivated by the desire to "strike a compromise between a class made up of actual heirs at law and one comprised of potential heirs at law" and, when it enacted the amendment that listed as persons who may receive damages "the deceased's spouse, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of the death of the deceased" it did not intend to include any persons who were not heirs at law. *Id.* at 591, 509 N.W.2d at 859.

Michigan's intestate succession statute permits an illegitimate child to inherit only under the following conditions:

(a) The man joins with the mother of the child and acknowledges that child as his child in a writing executed and acknowledged by them in the same manner provided by law for the execution and acknowledgment of deeds of real estate and recorded at any time during the child's lifetime in the office of the judge of probate in the county in which the man or mother of the child reside at the time of execution and acknowledgment. It shall

not be necessary for the mother of the child to join in the acknowledgment if she is disqualified to act by reason of mental incapacity, death, or any other reason satisfactory to the probate judge of the county in which the acknowledgment may be recorded.

(b) The man joins with the mother in a written request for a correction of certificate of birth pertaining to the child that results in issuance of a substituted certificate recording the birth of the child.

(c) The man and the child have borne a mutually acknowledged relationship of parent and child that began before the child became age 18 and continued until terminated by the death of either.

(d) The man has been determined to be the father of the child and an order of filiation establishing that paternity has been entered pursuant to the paternity act.

M.C.L.A. § 700.111(4).

The fourth condition was added after the Michigan Supreme Court decided *Easley v. John Hancock Ins. Co.,* 403 Mich. 521, 271 N.W.2d 513 (1978). The *Easley* court held that, in a case in which filiation had been judicially determined, it was unconstitutional to treat an illegitimate child unequally because he or she had failed to meet the requirements for intestate succession. 403 Mich. at 524–25, 271 N.W.2d at 514–15. It based its decision on *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) in which the Supreme Court held that the Illinois rules of intestate succession, which excluded illegitimate children, were unconstitutional. In *Trimble,* a state court had found the decedent to be the father of the claimant in a paternity action. *Id.* at 772, 97 S.Ct. at 1466.

Pursuant to statute, the order of filiation entered in the Circuit Court of Berrien County for Darmeasia Maben establishes the decedent as her natural father for all purposes of intestate succession. Under any interpretation of the wrongful death statute, she is within the class of persons who may claim damages.

In contrast, Norris Maben Jr., who was born after Norris Maben died and has no

order of filiation, is not recognized as an heir under Michigan's intestate laws. *See* M.C.L.A. § 700.111, M.S.A. § 27.5111; *In re Vellenga Estate*, 120 Mich.App. 699, 703, 327 N.W.2d 340, 342–43 (1982) (under statutory scheme, child born out of wedlock after the death of his or her purported natural father cannot be determined to be a heir of the father for purposes of intestate succession).

Norris Maben Jr.'s GAL urges this Court to grant Norris Jr. damages under the wrongful death act on the basis of the Equal Protection Clause of the United States Constitution and Article 1, Sections 2 and 7 of the Michigan Constitution. It is a denial of equal protection in many instances to treat illegitimate children differently from legitimate children. *See, e.g., Clark v. Jeter*, 486 U.S. 456, 465, 108 S.Ct. 1910, 1916, 100 L.Ed.2d 465 (1988) (Pennsylvania's six-year statute of limitations for paternity actions does not withstand heightened scrutiny under equal protection clause); *Pickett v. Brown*, 462 U.S. 1, 7, 103 S.Ct. 2199, 2203, 76 L.Ed.2d 372 (1983) (statutory classifications based on illegitimacy subject to a heightened level of scrutiny).

*Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), is particularly applicable. At issue in *Levy* was whether five illegitimate children could recover damages as a result of the wrongful death of their mother. *Id.* at 69–70, 88 S.Ct. at 1510. The Louisiana wrongful death statute provided that "the surviving spouse and child or children of deceased" had the right to recover damages. *Id.* at 69 n. 1, 88 S.Ct. at 1510 n. 1. The court of appeals as well as the district court had held "that 'child' in article 2315 means 'legitimate child.'" *Id.* at 70, 88 S.Ct. at 1510. The Supreme Court reversed, asking "When the child's claim of damages for loss of his mother is in issue, why, in terms of 'equal protection,' should the tortfeasor go free merely because the child is illegitimate?" *Id.* at 71, 88 S.Ct. at 1511. It held that "it is invidious to discriminate against [illegitimate children] when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done their mother." *Id.* at 72, 88 S.Ct. at 1511.

Another pertinent case is *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), which addressed the distribution of worker compensation to the children of a father who died from work related injuries. Four of the children were legitimate and two were unacknowledged illegitimate children, including one who was born after the death of the father. *Id.* at 165–66, 92 S.Ct. at 1401–02. State law provided that legitimate children and acknowledged illegitimate children could recover on an equal basis but that unacknowledged illegitimate children were relegated to a lesser status that resulted in their exclusion from any recovery in the action. *Id.* at 167, 92 S.Ct. at 1402–03. The Supreme Court reversed the state court, holding that the distinctions were not permissible under an equal protection analysis. *Id.* at 172–76, 92 S.Ct. at 1405–07. Stressing that recovery under worker's compensation rested on a finding of dependency, the Court concluded:

> The state interest in legitimate family relationships is not served by the statute; the state interest in minimizing problems of proof is not significantly disturbed by our decision. The inferior classification of dependent unacknowledged illegitimates bears, in this instance, no significant relationship to those recognized purposes of recovery which workmen's compensation statutes commendably serve.

*Id.* at 175, 92 S.Ct. at 1406.

The Supreme Court declined, however, to strike down a New York state restriction on illegitimate children who seek to inherit by intestate succession. *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). The New York statute at issue in *Lalli* provided that an illegitimate child could inherit by intestate succession only if the child's paternity was determined during the father's lifetime. *Id.* at 261–62, 99 S.Ct. at 521. The purported father in *Lalli* had lived for many years after the birth of his son, the plaintiff, and had openly acknowledged the plaintiff as his son, but had never taken the steps required under New York law to legitimize the son. *Id.* at 262–63, 99 S.Ct. at 521–22. The court held that the state had a substantial interest in the just and orderly disposition of

property at death, that claims of paternity involved "peculiar problems of proof," and that the restriction was substantially related to the state's interest. *Id.* at 268–275, 99 S.Ct. at 526–28.

In the instant case, the issue is whether the *Renaud* case bars an award of wrongful death damages to decedent's after-born child. The Court of Appeals for the Sixth Circuit held in *Wieczorek v. Volkswagenwerk, AG,* 731 F.2d 309, 310 (6th Cir.1984) that "[t]he law of Michigan is controlled by a decision of the Michigan Court of Appeals until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise." The Sixth Circuit has also held, however, that the federal court "need not blindly follow such precedent where we are 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1234 n. 11 (6th Cir.1988).

The *Renaud* case is based on a very different fact pattern than the instant case—whether a child of a parent whose parental rights had been terminated could recover on the death of the parent, not whether an after-born illegitimate child could recover. The facts that prompted the court of appeal's interpretation of the wrongful death statute in *Renaud* did not prompt it to give any consideration to the constitutional rights of illegitimate children because the child in that case was not illegitimate. The *Renaud* court did not analyze the balance between the interest in the orderly distribution of estates and the interest in treating illegitimate children fairly. The court also gave no consideration to a central concern of the legislature in amending the wrongful death act—to compensate those who suffer loss from a wrongful death. The short statement released by the House Legislative Analysis Section on July 22, 1985, states:

What is needed is a clearer definition of those entitled to recover damages in a wrongful death action, *which reflects both kinship and suffering due to loss of a loved one.*

It also states:

The *Crystal* decision made the class of persons entitled to recover damages too large and unwieldy. The bill resolves this problem *by stating exactly who may recover damages* for the wrongful death of another. *More importantly, the bill recognizes that the purpose of the wrongful death statute is to allow those who suffer a loss to recover for that loss.*

If the *Renaud* court had focused on identifying whether a child can be said to suffer loss when a father whose paternal rights have been terminated dies, it could have resolved the issue without making blanket restrictions for distinct factual circumstances. As it is, the blanket statements in *Renaud* are dicta as they apply to issues other than the issue of determining who is a "descendant." In contrast to *Renaud,* this is not a case where the parental relationship was terminated prior to death. Instead, Norris Maben acknowledged his paternity of the expected child prior to birth but met his untimely death before the child was born.

The restrictions placed on recovery by the *Renaud* court would, if applied in the instant case, bar the recovery of Norris Maben's after-born illegitimate child, who is as likely as his sister to suffer the loss of their father. By its express language, Michigan's wrongful death statute comports with the equal protection concerns expressed by the Supreme Court in *Levy v. Louisiana* and *Weber v. Aetna.* The legislative history of Michigan's wrongful death act represents that the amended statute states "exactly who may recover damages." It would not be appropriate, and would be contrary to the legislative intention, to place restrictions on the term "children" that are not in the statute and that would allow recovery only to children who could inherit intestate.

The legislative history supplies additional support for an interpretation that does not tie the wrongful death statute rigidly to the intestate laws. Prior to amendment, the wrongful death statute restricted recovery to those persons who suffered loss and who "would be entitled to inherit the personal property of the deceased had he died intestate." The July 22, 1985, legislative analysis expressed the legislature's desire to separate the wrongful death recovery from the intestate laws and the probate process:

The old definition of the class to recover (i.e., spouse and next-of-kin [who would be entitled to inherit the personal property of the deceased had he died intestate]) was too restrictive and failed to address cases where those who suffered loss might not have been the nearest kin to the deceased. The notification provisions ensure that everyone's due process rights will be observed, and that plaintiff's attorneys will know who the potential claimants are. Finally, the bills make it possible for the circuit court to resolve these types of actions without the probate court's final approval. This should simplify procedures and reduce court expenses.

House Legislative Analysis Section, House Bill 4486 and 4487, Third Analysis (7–22–85).

An interpretation of the wrongful death act that would allow an after-born illegitimate child to inherit is also consistent with Michigan Supreme Court decisions that have considered the rights of after-born children under other death benefit cases. In *La Blue v. Specker*, 358 Mich. 558, 100 N.W.2d 445 (1960), the court considered the rights of an after-born child under a statute authorizing those who have been injured by an intoxicated person to bring an action against the person who unlawfully furnished intoxicating liquor. Those entitled to bring such an action included "[e]very wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise." *Id.* at 560 n. 1, 100 N.W.2d at 446 n. 1. The court held that the illegitimate after-born child should not be dismissed from the suit; she had a right to recover provided she could establish the decedent was her father and could prove damage and dependency. *Id.* at 578, 100 N.W.2d at 455–56. *See also Westfall v. J.P. Burroughs & Son*, 280 Mich. 638, 274 N.W. 358 (1937) (illegitimate after-born child of deceased employee wrongfully dismissed from worker's compensation case; child can recover if she can establish dependency).

The state has legitimate concerns in the orderly determination of wrongful death benefits as well as intestate inheritance, but in light of the constitutional concerns regarding wrongful death benefits to after-born illegitimate children and the requirement in the wrongful death act that loss as well as relationship be established, the concerns for an orderly process can be satisfied by following criteria like those imposed on Social Security Act survivor's benefits. Under 42 U.S.C. § 416(h)(3)(C)(ii), a child is considered the "child" of the wage earner if there is satisfactory evidence that the child is the biological child of the insured and the insured lived with the child or contributed to its support at the time of the insured's death. In the instant case, there is satisfactory evidence that Norris Jr. is the biological child of decedent and uncontroverted evidence that Norris Maben lived with Ericka Robinson on at least a part-time basis during the months before his death during which Ericka was pregnant with Norris Jr. *See Wagner v. Finch*, 413 F.2d 267, 268 (5th Cir.1969) (support requirement fulfilled when father lived with mother of after-born child on a part-time basis at the time of his death).

On the basis of the uncontroverted evidence that Norris Maben was the natural father of Norris Maben Jr. and pursuant to the plain language of Michigan's wrongful death statute, in light of the legislative history and in light of the equal protection concern that would arise if "children" were read to deny recovery to illegitimate children under the act, this Court will permit Norris Maben Jr. as well as his sister, Darmeasia Maben, to recover under the wrongful death act.

### *Distribution*

█ There is no evidence that the decedent contributed to the financial support of anyone, although he bought some things for Darmeasia. There is evidence, however, that he was an attentive father to Darmeasia and was looking forward to the birth of Norris Jr. Because of Norris Maben's death, the children have been deprived of the love and companionship of their father from their infancy. This is a substantial loss, more life-shattering than the loss of a grown brother and son. Accordingly, after attorneys' fees and costs are taken from the settlement amount, the remainder will be distributed as follows: three-fourths to be distributed

equally between Darmeasia Maben and Norris Maben Jr., and one-fourth to be distributed among the group consisting of the mother and siblings as they see fit. If, on appeal, the determination that Norris Maben Jr. may recover wrongful death damages is reversed, the distribution should be three-fourths to Darmeasia Maben and one-fourth to the group consisting of the mother and siblings. Before the actual amounts can be determined, the GAL fees and costs and the funeral costs must be determined. A statement of funeral expenses has already been filed. If there is any objection to the total of $4,325.20 for funeral expenses, a brief statement of the objection must be filed within ten days. In addition, the GALs must each file a statement of their fees and expenses within ten days. Any objections to the GAL fees must be filed within ten days of service of the statements. This Court's Order of June 10, 1994, is suspended and will be altered as to the dollar amount to be paid Sommers, Schwartz, Silver & Schwartz pursuant to the contingency agreement when the full amount of costs are determined. An Order consistent with this Opinion will be entered.