**Arthur F. VINE, Personal Representative for the Estate of Richard A. Vine, Plaintiff,**

v.

**CITY OF LANSING POLICE DEPARTMENT, et al., Defendants.**

No. 5:93–CV–155.

United States District Court, W.D. Michigan, Southern Division.

June 21, 1996.

Geoffrey N. Gieger, Fieger, Fieger & Schwartz, Southfield, MI, Ronald M. Bahrie, Lansing, MI, for plaintiff.

Patrick A. Aseltyne, Johnson, Rosati, Galica & Shifman, Lansing, MI, for defendants Ingham County, Ingham County Sheriff's Dept., Sheriff Wrigglesworth, Deputy Whitmore, Deputy Maier.

Michael R. Kluck, Michael R. Kluck & Assoc., Okemos, MI, for defendant Deputy Whitmore.

James S. O'Leary, Denfield, Timmer, Jamo & O'Leary, Lansing, MI, Robert G. Kamenec, Plunkett & Cooney, Detroit, MI, for defendants City of Lansing, Lansing Police Dept., Chief Boles, Officers David Prentler, David Benson, Jennifer Freeman, Kevin Moore, Kenneth Ruppert, Thomas Wright.

John D. Nickola, Nickola & Associates, Flint, MI, for intervenor Bobrowski.

## OPINION AND ORDER DENYING MOTION FOR RELIEF FROM ORDER DISTRIBUTING PROCEEDS

McKEAGUE, District Judge.

Judgment was entered in this case on April 12, 1995, awarding plaintiff $500,000 in compensatory damages and $1,000,000 in punitive and exemplary damages, on the deliberate indifference and gross negligence claims against defendants Sgt. Kenneth Rupert and Officer Kevin Moore. On September 29, 1995, the Court issued an opinion and order on post-trial motions, resolving several legal issues and holding that the judgment would be amended to reflect set-off of the settlement amount already received by plaintiff and to include recoverable attorneys' fees, costs and prejudgment interest, following completion of a supplemental briefing schedule. Before the briefing schedule was completed, the Court received notice that the parties had settled their differences and had reached an agreement providing for a total recovery by plaintiff of $1,775,000. An order for distribution of settlement proceeds was issued following a hearing on November 20, 1995.

Now before the Court is the motion of intervenor Edward J. Bobrowski for relief from the order distributing settlement proceeds. Intervenor is the brother of the plaintiff estate's decedent, Richard A. Vine. He claims entitlement to damages in connection with his brother's death and plaintiff's recovery under the Michigan Wrongful Death Act. Intervenor Bobrowski did not timely object to the distribution of proceeds approved by the Court because he did not receive notice of the November 20, 1995 hearing at which the distribution was approved. Intervenor correctly argues this lack of notice is a circumstance that may warrant relief from the order under Fed. R.Civ.P. 60(b). He would have the Court set aside the order distributing proceeds and reopen the matter, giving full consideration

to his right of recovery and to the question whether some of the proceeds ought to have been disbursed to the estate as compensation for Richard Vine's conscious pain and suffering.

Having duly considered the parties' briefs in support of and opposition to the motion, and having heard oral arguments of counsel on March 11, 1996, the Court now renders its opinion.[1]

## I

Intervenor's motion presents two threshold questions. First, was he entitled to notice of the hearing on the motion to approve distribution of proceeds? Second, if so, does he have a legitimate claim of interest in the wrongful death proceeds?

Richard A. Vine died while in the custody of the City of Lansing Police Department on January 7, 1992. This action, commenced by Arthur F. Vine, personal representative for the estate of Richard Vine, has involved the adjudication of various claims under state and federal law growing out of the death. Arthur Vine is the adoptive father of Richard Vine. In 1980, Arthur Vine and his wife, Sandra, adopted Richard Vine and his two sisters, Sarah Pryer and Charlotte Vine. A remaining brother, Edward Bobrowski, continued to reside with his biological grandparents and was not adopted by the Vines. It is undisputed, however, that Edward Bobrowski maintained a relationship with his deceased brother.

■ Michigan's Wrongful Death Act requires the personal representative to serve notice of the hearing on a motion seeking authority to distribute proceeds of a settlement or a judgment "upon all persons who may be entitled to damages under subsection (3)." M.C.L. § 600.2922(6)(b). Subsection (3), in relevant part, defines "the persons who may be entitled to damages" as:

(a) The deceased's spouse, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of the death of the deceased.

Relying on the plain language of this definition, intervenor argues that he is a brother of the deceased who is entitled to damages and should have received notice. As discussed in part II, below, statutory language is not always as plain as it seems. Nonetheless, for the reasons that follow, the Court agrees that intervenor should have received notice of the hearing on the motion to approve distribution of proceeds.

■ A personal representative, whose responsibility it is to serve notice of the hearing, is a fiduciary. M.C.L. § 700.5. As such, he stands in a position of confidence and trust vis-a-vis the estate, heirs and beneficiaries. M.C.L. § 700.501; *McTaggart v. Lindsey,* 202 Mich.App. 612, 617, 509 N.W.2d 881 (1993). A fiduciary's duties require him to act honestly and in good faith and to be wary of conflicts of interest. See *id.* at 618, 509 N.W.2d 881. Naturally, counsel representing a personal representative would have similar and arguably heightened duties to ensure fair treatment of claimed interests. *Id.*

It is undisputed that the personal representative, advised by counsel, was aware of Edward Bobrowski's interest and yet failed to give him the required notice of hearing. In fact, one week after the judgment was entered in April 1995, Bobrowski had given the personal representative formal notice of his claim for wrongful death damages. Bobrowski's purported interest derives directly from the plain language of the Wrongful Death Act, § 2922(3). As a natural brother of the decedent, who maintained a relationship with him, Bobrowski claimed, and claims, that he is entitled to share in the wrongful death proceeds. In deciding not to give Bobrowski notice of the hearing, the personal representative observed that § 2922(3) has recently been construed by Michigan courts to have a meaning at odds

1. Plaintiff's motion for sanctions (docket # 233) was withdrawn at the March 11th hearing and is given no further consideration.

with its apparent meaning. Still, the construction that has evolved in the caselaw is not so clear and settled as to warrant a unilateral determination by the personal representative that someone in Bobrowski's position was not "a person who may be entitled to damages."

In seeking the Court's approval of the proposed distribution, the personal representative made no mention of Edward Bobrowski or his interest. To the contrary, the personal representative, through counsel, affirmatively represented in his motion to distribute settlement proceeds "that all the interested parties are appearing before the Court either in person or by presentment of a waiver and consent thereby agreeing to the distribution as set forth herein." Similarly at the hearing on November 20, 1995, counsel represented that, with the exception of Charlotte Vine, on whose behalf a waiver of attendance and consent to the proposed settlement had been filed, all remaining heirs at law were present in the courtroom.

The personal representative's knowing silence about the claim of a natural brother of the decedent does not reflect the sort of candor and good faith required of a fiduciary. In the opinion of the Court, both the personal representative and his counsel technically breached their fiduciary duties and violated the Wrongful Death Act notice requirement.[2] The seriousness of this misfeasance, however, is necessarily a function of the gravity of the resultant harm, a question addressed in part II of this opinion.

## II

■ In *In re Renaud Estate*, 202 Mich. App. 588, 509 N.W.2d 858 (1993), *lv. app. denied*, 444 Mich. 987, 519 N.W.2d 154 (1994), the Michigan Court of Appeals refused to apply the § 2922(3) "persons enti-

tled to damages" language of the Wrongful Death Act in accordance with its plain meaning. The court consulted legislative history and held that "deceased's spouse, children, descendants, parents, grandparents, brothers and sisters" are terms that must be construed with reference to the laws of intestate succession. The legislative history provides only equivocal support for this construction, as pointed out by the dissenting opinion. Nonetheless, the *Renaud* majority went on to hold that a natural daughter of a decedent could not recover wrongful death proceeds, even though she was a "descendant," because she had been adopted by her mother's new husband. Under the laws of intestate succession, the court implicitly observed, an "adopted person shall no longer be an heir of his natural parent." M.C.L. § 700.110(3). That is, by virtue of her adoption, the claimant in *Renaud* was deemed by operation of law to have ceased to be the child or the descendent of her natural father.

The Michigan Court of Appeals has subsequently reaffirmed the rule of *Renaud* in *In re Claim of Turner*, 209 Mich.App. 66, 530 N.W.2d 487 (1995). *Turner*, too, holds that the terms "spouse, children, descendants, grandparents, brothers and sisters" must be construed in light of the laws of intestate succession. Hence, an illegitimate child of the deceased father was held not to be a "child" entitled to damages under the Wrongful Death Act because the father's parentage had not been formally established pursuant to the requirements of the laws of intestate succession, M.C.L. § 700.111(4).

■ *Renaud* and *Turner* represent the state of the law in Michigan. The Court is obliged to follow them unless "convinced by other persuasive data that the highest state court would decide otherwise." *Monette v. AM–7–7 Baking Co., Ltd.*, 929 F.2d 276, 280–81 (6th Cir.1991); *Pratt v. Brown Machine*

---

2. The Court also observes that intervenor is not entirely blameless. He and his counsel were aware of the pendency of the trial in this matter and the entry of judgment in April 1995. They had also been advised unequivocally that the personal representative did not recognize Bobrowski's claim as valid or legally cognizable. Yet, for reasons unexplained, intervenor did not apprise this Court of his interest until eight months later, after the proceeds had been distrib-

uted. This is not a case where the personal representative actively concealed the existence of the wrongful death recovery from a claimant in an attempt to defeat his claim. Intervenor was not kept or left entirely in the dark. Had intervenor more affirmatively asserted his interest earlier, the eventual notice problem could have been avoided. Yet, as the Court has found, the failure of notice was a technical breach of duty.

*Co.,* 855 F.2d 1225, 1234, n. 11 (6th Cir.1988). There is no such persuasive data.

In *Robinson v. Fiedler,* 870 F.Supp. 193 (W.D.Mich.1994), this Court, the Honorable Gordon J. Quist, avoided the rule of *Renaud* by strictly limiting its holding to its facts and by employing equal protection analysis. Judge Quist ruled that an illegitimate child of a deceased father could recover wrongful death damages under Michigan law even though the intestate succession requirements had not been met. Without speculating about the correctness of the *Robinson* decision, the Court observes that its reasoning was implicitly rejected by the Michigan Court of Appeals five months later in *Turner.* Moreover, this case does not present the sort of equal protection concerns that Judge Quist found compelling in *Robinson.*

Suffice it to say the Court finds no persuasive reason to believe the Michigan Supreme Court would depart from the holdings of *Renaud* and *Turner,* in applying § 2922(3) to the present facts. In fact, the Michigan Supreme Court was asked and declined to review *Renaud.* 444 Mich. 987, 519 N.W.2d 154 (1984).

Accordingly, concluding that intervenor Bobrowski is a brother for purposes of recovery under the Wrongful Death Act only if he is a brother under the laws of intestate succession, the Court must determine the impact of Richard Vine's adoption by Arthur and Sandra Vine upon his legal relationship with his natural brother, Edward Bobrowski. Under M.C.L. § 700.110(3), "the adopted person shall no longer be an heir of his natural parents or an heir of the lineal and collateral kindred of his natural parents." This means that the adopted person, here Richard Vine, is no longer an heir of his natural parents or of the children of his natural parents. That is, for purposes of inheritance, he is no longer his brother's brother. While the statute does not explicitly provide that the children of the natural parents are no longer the adopted person's siblings for purposes of the Wrongful Death Act, this result may be reasonably inferred, a legal severing of the sibling relationship being deemed mutually, or reciprocally effective. In other words, if as a result of the adoption, Vine can no longer be considered Bobrowski's brother, it necessarily follows that Bobrowski can no longer be considered Vine's brother.

Hence, notwithstanding the relationship that continued between Vine and Bobrowski, Bobrowski had, for purposes of intestate inheritance and for purposes of recovery under the Wrongful Death Act, ceased to be Vine's brother when Vine was adopted. At the time of Vine's death, therefore, intervenor Bobrowski was not a person entitled to damages under the Wrongful Death Act. This result is not entirely agreeable to the Court. It also appears not to be entirely consistent with the Wrongful Death Act's purpose to allow recovery based on kinship and suffering due to loss of a loved one. See *Robinson, supra,* 870 F.Supp. at 199. It is a result, however, that is compelled by Michigan decisional law.[3]

This conclusion does not excuse the personal representative's failure to give intervenor notice of the hearing on the motion to approve distribution of proceeds as a "person who *may* be entitled to damages." The personal representative's seemingly cavalier discharge of his duties is not to be condoned. The Court's holding does mean, however, that the failure of notice was in this case, ultimately, a harmless error.

### III

Intervenor Bobrowski is not a person entitled to damages and therefore lacks standing to object to the distribution of proceeds. The distribution of proceeds approved by the Court will therefore not be disturbed, and intervenor's motion for relief from the order is **DENIED.**

**IT IS SO ORDERED.**

---

3. The Court does not mean to imply it believes *Renaud* and *Turner* to be wrongly decided. The Court appreciates the practical wisdom they reflect; it is their impact upon the integrity of statutory construction that concerns the Court. Yet, this is a concern to be addressed, if at all, by the Michigan Supreme Court or the Michigan Legislature. This Court's role is merely to apply the governing state law, not to make it, or re-make it.